**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x
CORY HUBBARD,                        )      11-cv-00433 (LAK)
                                   )
            Plaintiff,       )      ECF Case
                                   )
      vs.                       )
                                   )
                                   )
MYSPACE, INC.,                  )
                                   )
            Defendant.     )
———————————————————————x

## MEMORANDUM OF LAW IN SUPPORT OF
## MYSPACE, INC.'s MOTION TO DISMISS
## THE CLASS ACTION COMPLAINT

Michael B. Mukasey
Matthew E. Fishbein
Jeffrey S. Jacobson
Courtney M. Dankworth
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

*Attorneys for Defendant*
*MySpace, Inc.*

February 11, 2011

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................1

FACTUAL BACKGROUND ..........................................................................2

ARGUMENT ................................................................................................5

I.      Plaintiff Fails to State a Claim for Violation of the Wiretap Act or the Stored Communications Act. ................................................................................5

        A.      The Wiretap Act Does Not Apply Because MySpace Did Not Intercept Hubbard's Electronic Communications While "In Transmission."............6

        B.      Hubbard Has No Claim Under the SCA. ......................................................8

                1.      18 U.S.C. §§  2703 and 2707(e) immunize MySpace. ....................8

                2.      That Hubbard's warrant issued from Georgia, and MySpace received it by fax in California, does not affect MySpace's immunity under the SCA. ............................................................11

II.     Plaintiff Fails to State a Claim that MySpace Breached the Terms of Use and Privacy Policy, or that MySpace Breached a Duty of Good Faith and Fair Dealing..........................................................................................13

        A.      The MySpace Terms of Use and Privacy Policy Indicate that MySpace Will Comply with a Search Warrant.........................................................14

        B.      MySpace Exercised Good Faith in Complying with the Georgia Warrant.........................................................................................15

III.    Hubbard's New York Statutory and Common Law Claims Fail...........................16

        A.      Hubbard Fails to State a Claim Under New York Gen. Bus. Law § 349. .16

        B.      New York Has No "Tort" of Public Disclosure of Private Facts. .............17

CONCLUSION............................................................................................19

## <u>TABLE OF AUTHORITIES</u>

Page

C<span>ASES</span>

*Bansal v. Microsoft Hotmail*, 267 Fed. Appx. 184 (3d Cir. 2008) .................................................10

*Bansal v. Server Beach*, 285 Fed. Appx. 890 (3d Cir. 2008)...................................................10, 16

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ....................................................................10

*Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443 (C.D. Cal. 2007)............................................7

*Druyan v. Jagger*, 508 F. Supp. 2d 228 (S.D.N.Y. 2007) .............................................................15

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ............................................................................18

*Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d 1052 (2d Cir. 1992)............15

*First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin.*, 90 F.3d 525 (D.C. Cir. 1996)..........6

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)................................10

*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3d Cir. 2003) ...................................................7

*Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004)..........................................12

*Freedman v. Am. Online, Inc.*, 412 F. Supp. 2d 174 (D. Conn. 2005) ..........................................12

*Hall v. Earthlink Network, Inc.*, 396 F.3d 500 (2d Cir. 2005).........................................................7

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002) ...................................15

*Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 612 N.E.2d 699 (N.Y. 1993) .......................................18

*ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234 (S.D.N.Y. 1997) ...............................................15

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424 (S.D.N.Y. 2000)...........10

*In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*,
 157 F. Supp. 2d 286 (S.D.N.Y. 2001)......................................................................................9

*In re Search of Yahoo, Inc.*, No. 07-3194-MB,
 2007 WL 1539971 (D. Ariz. May 21, 2007) .........................................................................11

*Jayne v. Sprint PCS*, No. CIV S-07-2522 LKK GGH P,
 2009 WL 426117 (E.D. Cal. Feb. 20, 2009).........................................................................11

*Keles v. Yale Univ.*, 889 F. Supp. 729 (S.D.N.Y. 1995) ....................................................15

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ....................................7

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006) .................................................4

*Market Street Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588 (7th Cir. 1991)......................16

*Maurizio v. Goldsmith*, 230 F.3d 518 (2d Cir. 2000) .....................................................16

*McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006).....................................................11

*Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*,
94 N.Y.2d 436, 727 N.E.2d 549 (N.Y. 2000) ...........................................................18

*Organizacion JD Ltda. v. U.S. Dep't of Justice*, 18 F.3d 91 (2d Cir. 1994)....................10

*Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690 (S.D.N.Y. 2007)...........................17

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*,
587 F. Supp. 2d 548 (S.D.N.Y. 2008).........................................................................7

*Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) ..................14

*Reisner v. Stoller*, 51 F. Supp. 2d 430 (S.D.N.Y. 1999)...................................................10

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) ...........17

*Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53 (2d Cir. 1993) ...................................2

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457 (5th Cir. 1994) .................7

*United States v. Bach*, 310 F.3d 1063 (8th Cir. 2002) ................................................4, 11

*United States v. Moriarty*, 962 F. Supp. 217 (D. Mass. 1997) .........................................8

*United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003).................................................7

*Verzani v. Costco Wholesale Corp.*, No. 09 Civ. 2117,
2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010)..........................................................17

*Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507 (S.D.N.Y. 2005) ...................15

*Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523 (S.D.N.Y. 2008)..................................14

*Wingate v. Gives*, No. 05 Civ. 1872 (LAK), 2008 WL 5649089 (S.D.N.Y. Apr. 13, 2008)...........2

### STATUTES

18 U.S.C. § 2510 ..................................................................................................5

18 U.S.C. § 2511 ...............................................................................................6, 8

18 U.S.C. § 2701 ..................................................................................................8

18 U.S.C. § 2702 ...............................................................................................5, 8

18 U.S.C. § 2703 ...............................................................................................8, 9

18 U.S.C. § 2707 ..............................................................................................8-11

18 U.S.C. § 2711 ..................................................................................................8

Cal. Penal Code § 1524.2(c) ...............................................................................12

Ga. Code Ann. § 15-11-2 ......................................................................................2

Ga. Code Ann. § 16-6-5 ........................................................................................2

Ga. Code Ann. § 16-12-1 .......................................................................................2

Minn. Stat. Ann. § 626.18 ...................................................................................12

N.Y. Civ. Rights Law § 50 ..................................................................................18

N.Y. Civ. Rights Law § 51 ..................................................................................18

New York Gen. Bus. Law § 349 .....................................................................16, 17

Va. Code Ann. § 19.2-70.3 ..................................................................................12

## PRELIMINARY STATEMENT

From the Georgia prison cell where he is serving 10 to 20 years on his own plea of guilty to the crime of enticing a 13-year-old girl he had befriended online, plaintiff Cory Hubbard sues defendant MySpace, Inc., for providing information — including messages he sent and received under the alias "sweetguycory" — in response to a validly issued Georgia warrant served on MySpace by facsimile transmission.  Hubbard seeks to represent a class of others "similarly situated," whose information MySpace disclosed to law enforcement authorities in response to legal process received by fax, and he demands compensatory and punitive damages for conduct he claims violates federal and New York law and MySpace's Terms of Use and Privacy Policy.

The MySpace documents Hubbard cites do not include any of the restrictions he attributes to them; to the contrary, these documents include clauses expressly reserving MySpace's right to monitor communications, delete inappropriate communications, and disclose information in response to legal process.  One of the federal laws Hubbard cites has no application to his claims and the other provides MySpace an explicit and complete defense to his claims.  The New York laws he cites have no relevance whatever to the conduct at issue here.

For all these reasons, this breathtakingly frivolous case should be dismissed.  Moreover, MySpace hereby notifies Hubbard and his attorney that because the terms of Hubbard's agreement with MySpace prove that his factual allegations are without evidentiary support, and because Hubbard has invoked laws that do not apply, and the interpretation of which cannot rationally be extended or modified to apply, MySpace will move for sanctions in the form of attorneys' fees pursuant to Rule 11, Fed. R. Civ. P., unless Hubbard withdraws this case with prejudice within two weeks of service of this motion, or such other time as the Court may set.

Should the Court actually have to rule on this motion to dismiss, MySpace requests that such ruling be issued as rapidly as possible, lest the pendency of this litigation affect adversely

the lawful cooperation that companies like MySpace generally provide to law enforcement authorities by accepting faxed warrants and responding to them.  Prompt cooperation with warrants issued by judges on probable cause established by law enforcement can be critical in the timely apprehension and prosecution of other "sweetguycory"s.

## FACTUAL BACKGROUND

According to the February 11, 2008 Georgia indictment to which Hubbard pleaded guilty in April 2008, Hubbard arranged to meet in person, on December 1, 2007, a 13-year-old girl he had befriended online.  On that day, Hubbard drove the girl to a hotel with the purpose of molesting her, but she escaped and called the police.  They arrested Hubbard at the hotel for the Georgia crimes of enticing a child for indecent purposes and contributing to the delinquency of a minor.[1]  Declaration of Courtney M. Dankworth, dated February 11, 2011 ("Dankworth Decl.") Ex. A at 24-26 (bill of indictment).  Hubbard admitted the facts in the indictment and is serving a sentence of at least ten years in prison, which will be followed by ten years of supervised and conditional probation.[2]

_____

[1] Under Georgia law, "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."  Ga. Code Ann. § 16-6-5 (West 2006).

"A person commits the offense of contributing to the delinquency, unruliness, or deprivation of a minor when such person . . . [k]nowingly and willfully encourages, causes, abets, connives, or aids a minor in committing an act which would cause such minor" to "[w]ithout just cause and without the consent of his or her parent or legal custodian desert[] his or her home or place of abode."  Ga. Code Ann. § 16-12-1; *id.* § 15-11-2.

[2] The Court may take judicial notice of Hubbard's certified public record of conviction.  *See Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of a public criminal docket); *Wingate v. Gives*, No. 05 Civ. 1872 (LAK), 2008 WL 5649089, at *3 n.7 (S.D.N.Y. Apr. 13, 2008) ("[T]he Court may take judicial notice of Plaintiff's conviction.").

MySpace.com is a social networking website.  Its millions of subscribers use MySpace for many purposes, including "to create unique personal profiles in order to find and communicate with old and new friends."  Compl. ¶ 10.  At the time of his arrest, Hubbard maintained a publicly accessible MySpace profile.  His "Friend ID" (*i.e.*, unique user number) was 79001021; he used the screen name "sweetguycory."  As a MySpace user, Hubbard agreed to MySpace's Terms of Service and Privacy Policy (together, the "Agreement"), which Hubbard appended to his complaint as Exhibit A.[3]  Hubbard refers to the Agreement as "a valid and enforceable contract between Plaintiff . . . and MySpace."  Compl. ¶ 122.

The Agreement included the following reservations of rights:

> MySpace **reserves the right**, in its sole discretion, to reject, refuse to **post or remove any posting (including, without limitation, private messages, emails and instant messages** (collectively, "messages")) by you, or to deny, restrict, suspend, or terminate your access to all or any part of the MySpace Services at any time, for any or no reason, with or without prior notice or explanation, and without liability.  In addition, MySpace reserves the right, in its sole discretion, to reassign or rename your profile URL.

> MySpace expressly reserves the right to remove your profile and/or deny, restrict, suspend, or terminate your access to all or any part of the MySpace Services if MySpace determines, in its sole discretion, that you have violated this Agreement or **pose a threat to MySpace, . . . Users and/or the public.**

Compl. Ex. A at 2, Paragraph 2 (emphasis added).  MySpace counseled users to:

> Please choose carefully the information that you post on, through or in connection with the MySpace Services that you provide to other Users.  Your MySpace profile may not include any form of Prohibited Content . . . [because]

---

[3]   Previous versions of both the Terms of Use and Privacy Policy were in effect when MySpace complied with the Cherokee County warrant in January 2008.  The relevant language in those earlier documents, however, was identical to that in the documents attached to Hubbard's Complaint.

> MySpace may reject, refuse to post or delete any Content for any
> or no reason, including, but not limited to, Content that in the sole
> judgment of MySpace violates this Agreement or which may be
> offensive, illegal or violate the rights of any person or entity, or
> harm or threaten the safety of any person or entity.

Compl. Ex. A at 3, Paragraph 7.

Among the "Content/Activity Prohibited" MySpace reserved the right to monitor and act upon included any use of the service that "**exploits people in a sexual or violent manner**," "**solicits or is designed to solicit personal information from anyone under 18**," "constitutes or promotes information that you know is false or misleading or **promotes illegal activities** or conduct that is abusive, threatening, obscene, defamatory or libelous," or "**furthers or promotes any criminal activity** or enterprise." Compl. Ex. A at 3-4, Paragraph 8 (emphasis added).

MySpace's Privacy Policy, which the Terms of Service incorporated by reference (Compl. Ex. A at 5, Paragraph 12), and Hubbard alleges to be part of the Agreement (Compl. ¶¶ 119, 122), stated that MySpace "**may access or disclose [a user's information]** in order to," among other things, "**protect the safety and security of Users of the MySpace services or members of the public including acting in urgent circumstances; . . . [or to] comply with the law or legal process**." Compl. ¶ 13; *id.* Ex. A. at 8 (emphasis added).

Following Hubbard's arrest, authorities in Georgia investigated the circumstances of his crime. On January 29, 2008, the Sheriff's Office in Cherokee County, Georgia, which was holding Hubbard in custody pending indictment and trial, faxed MySpace a search warrant, signed by a magistrate judge, seeking records "concerning the identity of the [MySpace] user

with the Friend ID 79001021," in connection with an investigation for the crime of enticing a child for indecent purposes.  Dankworth Decl. Ex. B at 2.[4]

MySpace received the Georgia authorities' search warrant at its operations headquarters in California, where it stored Hubbard's data.  It then complied with the warrant.  The warrant specifically sought "name, postal code, country, e-mail address, date of account creation, IP address at account sign-up, logs showing IP address and date stamps for account accesses, and the contents of private messages in the user's inbox and sent mail folders."  Dankworth Decl. Ex. B at 2.  MySpace produced (1) records identifying the owner of the "sweetguycory" profile as Hubbard, (2) the Internet Protocol addresses from which the "sweetguycory" account was accessed, and (3) "sweetguycory's" inbox and sent items folder, reflecting messages he sent to and received from other MySpace users.  *See* Compl. ¶ 3.

## ARGUMENT

**I.    Plaintiff Fails to State a Claim for Violation of the Wiretap Act or the Stored Communications Act.**

Hubbard asserts that the Wiretap Act, 18 U.S.C. § 2510, *et seq.*,[5] and/or the Stored Communications Act, 18 U.S.C. § 2702, *et seq.* (the "SCA") barred MySpace from producing documents in response to the Georgia warrant because MySpace received the warrant by fax in

---

[4]    This Court may consider the Georgia search warrant itself on this motion to dismiss because "the complaint relies heavily upon its terms and effect."  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

   *United States v. Bach*, 310 F.3d 1063 (8th Cir. 2002), contains an extensive discussion of the rationale behind authorities requesting electronic data by search warrant and causing the custodians of that data to execute the search outside the physical presence of the authorities who served the warrant.  "[W]arrants for electronic data are often served like subpoenas (via fax)."  *Id.* at 1067 n.1.  In these circumstances, "the actual physical presence of an officer would not have aided the search (and in fact may have hindered it)."  *Id.* at 1067.

[5]    The Electronic Communications Privacy Act of 1986 ("ECPA") amended the Wiretap Act to include electronic communications, and enacted the SCA.  Hubbard's complaint erroneously refers to the Wiretap Act as ECPA.

California.   He contends that MySpace's providing his communications to the Georgia authorities therefore constituted "intercept[ing] and disclos[ing] electronic communications," and "divulg[ing] the contents of communications of MySpace's Users to persons other than the intended recipients."   Compl. ¶¶ 47-48, 78, 86.   The Wiretap Act does not apply to Hubbard's claims, however, as numerous cases confirm.   As for the SCA, Hubbard's complaint paraphrases rather than quotes the statute, and in so doing omits the law's explicit grant of immunity that requires dismissal of his claim.   *Cf. First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin.*, 90 F.3d 525, 530 (D.C. Cir. 1996) ("Never paraphrase a statute.").

### A. The Wiretap Act Does Not Apply Because MySpace Did Not Intercept Hubbard's Electronic Communications While "In Transmission."

The Wiretap Act deals with interception of electronic communications while they are *in transmission* from point to point — which Hubbard does not and cannot allege that MySpace did.   Hubbard cites 18 U.S.C. § 2511(1), which provides (emphasis added):

> Except as otherwise specifically provided in this chapter any person who —
>
> (a) intentionally **intercepts**, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; . . . [or]
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the **interception** of a wire, oral, or electronic communication in violation of this subsection . . .
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

Hubbard also cites 18 U.S.C. § 2511(3)(a), which provides:

> [A] person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an

6

agent thereof) **while in transmission** on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient.

Hubbard's claim relates to emails already in his mailbox or sent items folder, not to messages "in transmission."  It is beyond dispute that accessing an electronic communication which *had long since been delivered to its recipient(s)* does not constitute "interception . . . in transmission" under the Wiretap Act.  Hubbard's claim, therefore, has no basis in the Wiretap Act's clear language or any case interpreting the Wiretap Act.

*Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 556-57 (S.D.N.Y. 2008), is one of many cases distinguishing the access of an electronic communication *in transit*, which is actionable under the Wiretap Act, from access to *already-delivered* and stored electronic communication, which is not.  In *Pure Power Boot Camp*, the court held that because an employer had "periodically accessed [an employee's] e-mail accounts and printed e-mails after they had been delivered," and "did not access and print [the employee's] e-mails contemporaneous with their transmission," the employer "did not violate the [Wiretap Act]."  *Id.* at 557-58; *see Hall v. Earthlink Network, Inc.*, 396 F.3d 500, 503-04 (2d Cir. 2005).  This principle is well established.  *See, e.g.*, *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1046-49 (11th Cir. 2003); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-79 (9th Cir. 2002); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 460-63 (5th Cir. 1994).

It is the SCA, rather than § 2511, that governs claims regarding previously-delivered, stored electronic communications.  *See Pure Power Boot Camp*, 587 F. Supp. 2d at 557 ("[I]n those cases which have examined whether the [Wiretap Act] or the SCA should apply to delivered e-mails, courts have concluded that the SCA, not the [Wiretap Act], is the proper statute to apply in situations similar to this case."); *Columbia Pictures, Inc. v. Bunnell*, 245

F.R.D. 443, 450 (C.D. Cal. 2007) ("[A]n electronic communication may either be intercepted and actionable under the Wiretap Act or acquired while in electronic storage and actionable under the SCA, but not both."); *United States v. Moriarty*, 962 F. Supp. 217, 221 (D. Mass. 1997) (noting "a legislative intent that there be a temporal difference between Sections 2511 and 2701, *i.e.*, that Section 2701 was to govern once electronic messages were stored").

For these reasons, Hubbard's claim under the Wiretap Act is not warranted by existing law or by a nonfrivolous argument for modifying existing law, and should be dismissed.

### B. Hubbard Has No Claim Under the SCA.

1. 18 U.S.C. §§ 2703 and 2707(e) immunize MySpace.

Hubbard's claim under the SCA fares no better. Assuming *arguendo* that MySpace is a "remote computing service" under the SCA,[6] the SCA (18 U.S.C. § 2703) **explicitly immunizes** remote computing services from claims, like Hubbard's, arising from their having disclosed information pursuant to the terms of a warrant. Courts regularly have dismissed as frivolous SCA-based challenges to the provision of electronic information in response to warrants, including in cases where the custodian of that information received the warrant, as MySpace did, by fax transmission. Section 2703 provides:

> **No cause of action shall lie** in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons **for providing information**, facilities, or assistance **in accordance with the terms of a court**

---

[6] The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communications system." *See* Compl. ¶ 83, relying on § 2711. Section 2702(a)(2) assumes that a "remote computing service" acts "solely for the purpose of providing storage or computer processing services to such subscriber or customer," and the law bars such providers from "knowingly divulg[ing]" the contents of communications that they "are not authorized to access . . . for purposes of providing any services other than storage or computer processing," absent circumstances such as responding to search warrants and other legal process.

> **order, warrant**, subpoena, statutory authorization, or certification under this chapter.

Authority from this Court confirms that "[t]he provider of the electronic communication or remote computing services who complies with an order issued under [§ 2703] is shielded from liability for any claim relating to the disclosure. 18 U.S.C. § 2703(e)." *In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 157 F. Supp. 2d 286, 289 (S.D.N.Y. 2001).

Hubbard's complaint cites and relies on § 2703, but neither quotes it directly nor faithfully renders its terms. Hubbard mischaracterizes § 2703 as "articulat[ing] the steps that federal and state law enforcement officers and other government entities must follow to compel providers to disclose the content" of communications. Compl. ¶ 74. He contends that § 2703 restricts MySpace from complying with a warrant unless the warrant was "issued by a court of competent jurisdiction" (*id.* ¶¶ 75, 88) and is a "valid grand jury or trial subpoena" (*id.* ¶ 79). He also portrays § 2703 as restricting MySpace from complying with a warrant or subpoena unless and until MySpace gives "notice of the subpoena to the user" (*id.* ¶¶ 89-91).

None of the requirements Hubbard falsely attributes to § 2703 appear anywhere in that statute or any other. There is no requirement in § 2703 that the recipient of a warrant look behind it and make an independent judgment of "validity" before complying. Section 2703(b)(1)(A), moreover, explicitly permits custodians to disclose information pursuant to a warrant *without* notifying the subscriber.

Hubbard's complaint similarly misrepresents § 2707(e) of the SCA, which goes further than § 2703 and provides that "good faith reliance on — (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . **is a complete defense to any civil or criminal action brought under this chapter or any other law**." *Id.* (emphasis added). Courts have made clear that this language yields a result that is as clear and sweeping as

9

the language itself.  *See, e.g.*, *Organizacion JD Ltda. v. U.S. Dep't of Justice*, 18 F.3d 91, 94 (2d Cir. 1994) (per curiam) ("[G]ood faith reliance on a court warrant or order is a complete defense.").  Hubbard's complaint cites § 2707, but fails to quote from the statute and falsely contends that it requires providers to determine that warrants are "valid and enforceable" before they can be said to have demonstrated good faith.

Claims like Hubbard's invariably have led to findings of immunity and dismissals on Rule 12(b)(6) motions, along with condemnations for litigating frivolously and abusively.[7] *Bansal v. Server Beach*, 285 Fed. Appx. 890, 892 (3d Cir. 2008) (per curiam), for example, involved claims by a prisoner that, while he was being prosecuted on narcotics charges, Microsoft responded to a warrant directing it to "divulge emails and to furnish information regarding Bansal's account."  Bansal argued that Microsoft violated the SCA and Pennsylvania wiretapping law and that Microsoft's defense of "good faith" under the SCA could not be resolved on a Rule 12(b)(6) motion.  The Third Circuit held that the district court "correctly dismissed Bansal's claims against Microsoft as frivolous."  *Id.*, *citing* Section 2707(e); *see also Bansal v. Microsoft Hotmail*, 267 Fed. Appx. 184 (3d Cir. 2008) (dismissing companion appeal as "meritless" due to § 2707).

---

[7]   In considering a motion to dismiss under Rule 12(b)(6), "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted."  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation marks omitted).  "The Court need not credit conclusory statements unsupported by fact allegations or legal conclusions and characterizations presented as factual allegations."  *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 434 (S.D.N.Y. 2000); *see also Reisner v. Stoller*, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").  A court may deny leave to replead if any amendment would be futile.  *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996).

Similarly, in *McCready v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006), eBay produced information about the plaintiff's transactions pursuant to a subpoena it "received . . . by mail, which is not improper."  The Seventh Circuit applied § 2707(e) and upheld a district judge's Rule 12(b)(6) dismissal of the plaintiff's claim.  The Seventh Circuit referred to the plaintiff as a "frivolous litigator" and issued an order for the plaintiff to show cause as to why he should not be liable for sanctions.  In *Jayne v. Sprint PCS*, No. CIV S-07-2522 LKK GGH P, 2009 WL 426117 (E.D. Cal. Feb. 20, 2009), the court cited § 2707(e) in dismissing a prisoner's claim that Sprint disclosed his mobile phone records without a warrant, based on statements by the police that exigent circumstances existed.  The plaintiff claimed that the police fabricated those circumstances and that Sprint should not have considered the police's assertions to be sufficient, but the court held that even if the police acted improperly, Sprint still would be entitled to dismissal on its Rule 12(b)(6) motion.  *See id.* at *7.

2.      That Hubbard's warrant issued from Georgia, and MySpace received it by fax in California, does not affect MySpace's immunity under the SCA.

Because many courts have described the practice whereby custodians of electronic information, like MySpace, accept search warrants by fax, including from out-of-state courts, MySpace submits that this Court may take judicial notice of this law enforcement practice's widespread nature.  The courts that have noted custodians' acceptance of faxed warrants have accepted the practice readily.  *See, e.g.*, *Bach*, 310 F.3d at 1067 (upholding admissibility of evidence from Yahoo! pursuant to a faxed search warrant); *id.* at 1066 n.1 (noting that "warrants for electronic data are often served like subpoenas (via fax)"); *In re Search of Yahoo, Inc.*, No. 07-3194-MB, 2007 WL 1539971, at *4 n.4 (D. Ariz. May 21, 2007) ("[A]n entity subject to a valid search warrant and an investigating agent located in a different district may mutually agree . . . to production of the sought-after records by fax or mail without the necessity of the agent

traveling to the outside district; provided, of course, the search warrant was properly authorized."); *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 650 (E.D. Va. 2004) ("*VA Freedman*") (noting that AOL responded to one thousand warrants and subpoenas per month, mostly faxed from out-of-state).

Although no prior case has addressed the exact situation presented here — a custodian's provision of stored electronic information in response to a faxed warrant issued by a state judge from outside the custodian's domicile — numerous courts have upheld against SCA-based challenges custodians' responses to faxed warrants from in-state courts and from federal courts outside the state. None of those decisions turned on any fact that could differentiate Hubbard's case. Indeed, the only occasion on which a court *ever* has refused to dismiss SCA-based claims against a provider for responding to a law enforcement request involved a faxed document from out of state which law enforcement officers *portrayed* as a warrant, but which had a blank line where the judge's signature should have been, and which, in fact, had not actually been approved by a judge. *See Freedman v. Am. Online, Inc.*, 412 F. Supp. 2d 174, 180 (D. Conn. 2005). There, and only there, the court proposed to let the trier of fact decide whether AOL should have noticed the blank line. *See VA Freedman*, 325 F. Supp. 2d at 649-50. Needless to say, the warrant issued by the court in Hubbard's criminal case had no such apparent or actual defect: It was, facially and actually, a warrant, supported by ample probable cause, signed by a judge.

California, moreover (along with the two other states which, with California, collectively house many of the country's most prominent internet communications companies), *requires* remote computing services organized under California law to respond to warrants issued by out-of-state courts as though those warrants had been issued by an in-state court. *See* Cal. Penal Code § 1524.2(c) (West 2010); *see also* Minn. Stat. Ann. § 626.18 (West 2010); Va. Code Ann.

§ 19.2-70.3 (West 2010).  Even if this California law did not *require* MySpace (as a Delaware corporation headquartered and storing data in California) to respond to the Georgia warrant it received by fax, the SCA cannot be read to have *prohibited* it from doing so.[8]  Neither Congress nor the California legislature possibly could have intended the absurd result that California-incorporated custodians must respond to faxed warrants and have immunity for doing so, while other custodians headquartered in California must not respond, on pain of lawsuits like this one.

## II.   Plaintiff Fails to State a Claim that MySpace Breached the Terms of Use and Privacy Policy, or that MySpace Breached a Duty of Good Faith and Fair Dealing.

Hubbard's contract claims are equally frivolous and can be disposed of simply by looking at the express terms of the documents he identified as "the contract" and appended to his complaint.  In the terms quoted above in the Statement of Facts, MySpace clearly advised users that it reserved the right to monitor, delete and act upon user communications, and that it would comply with "the law and legal process" and otherwise manage communications and access to its services "to protect the safety and security of [users] or the public."  Hubbard's complaint did not quote any language from the Agreement, and nothing in those documents remotely supports

---

[8]   Hubbard's complaint appears to argue not just that it was illegal for MySpace to have responded to a faxed warrant from Georgia, but that Georgia authorities had no right to demand production of Hubbard's information from MySpace's non-Georgia servers *at all*. Whereas MySpace's contractual venue clause requires MySpace members to pursue civil claims in New York, Hubbard acknowledges that "MySpace does business [in] and operates throughout the United States" (Compl. ¶ 7), including in Georgia.  MySpace does not dispute, nor can Hubbard, that MySpace's contractual venue clause does not bind law enforcement authorities, who have inherent jurisdiction to investigate and pursue civil and criminal offenses allegedly committed against residents of their states.  Were it not the case that law enforcement authorities across the 50 states have jurisdiction to demand production from companies doing business in their states, these authorities could not protect their citizens as effectively, and state authorities outside California would have to seek interstate cooperation from California officials in obtaining information necessary for investigations and prosecutions — exactly the result the California legislature sought to avoid by requiring California-incorporated custodians to respond directly to out-of-state warrants.

Hubbard's claim that MySpace assumed an express or implied contractual duty to ignore the Georgia warrant or resist complying with it.

### A.   The MySpace Terms of Use and Privacy Policy Indicate that MySpace Will Comply with a Search Warrant.

MySpace's Agreement with Hubbard, which Hubbard's complaint calls "a valid and enforceable contract between Plaintiff . . . and MySpace," Compl. ¶ 122, explicitly identified "instances when MySpace may access or disclose" personally identifiable information, profile information, or other information about a MySpace user.  It would do so:

> in order to: (i) protect or defend the legal rights or property of MySpace . . . ; (ii) **protect the safety and security of Users of the MySpace Services or members of the public**[,] including acting in urgent circumstances; (iii) protect against fraud or for risk management purposes; or (iv) **comply with the law or legal process**.

Compl. Ex. A, at 8 (emphasis added).

Exactly as the Agreement contemplated, MySpace produced Hubbard's information only after receiving the Georgia warrant.  Hubbard's Complaint, however, alleges that the Agreement imposed on MySpace twin duties to advise him, in his jail cell, that it had received a search warrant seeking his information before complying with the warrant, and to conform to "strict requirements" (*i.e.*, by ignoring or resisting the warrant because Georgia authorities transmitted it by fax).  *E.g.,* Compl. ¶¶ 14, 123.  This purported "interpretation" of the Agreement would thwart the contract's actual terms and expressed intent to protect the safety of MySpace users and the public.

The court need not accept as true an allegation that is contradicted by documents on which the complaint relies.  *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) ("If these documents contradict the allegations of the amended complaint, the documents control."), *quoting Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y.

2000).   Where, as here, a "breach of contract claim is refuted by indisputable documentary evidence," the result should not only be dismissal, but the imposition of sanctions.  *Keles v. Yale Univ.*, 889 F. Supp. 729, 733 (S.D.N.Y. 1995) (agreements between the parties directly contradicted plaintiff's claim); *see also Druyan v. Jagger*, 508 F. Supp. 2d 228, 238 (S.D.N.Y. 2007) (deeming "frivolous" plaintiff's claim for breach of contract where plaintiff's agreement with website directly contradicted claim); *Weinraub v. Glen Rauch Sec., Inc.*, 419 F. Supp. 2d 507, 517 (S.D.N.Y. 2005) (dismissing plaintiff's claim for breach of contract, and imposing sanctions because plaintiff failed to offer any "nonfrivolous argument" in support of the claim).

### B.    MySpace Exercised Good Faith in Complying with the Georgia Warrant.

Hubbard attempts to use the same false charge — that MySpace undertook not to accept faxed service of any warrant or to comply with out-of-state warrants — as the basis for a claim for breach of the implied duty of good faith.  As a threshold matter, this claim fails for the simple fact of its redundancy:  "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002), *quoting ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997).  Even more fundamentally, however, no duty requires MySpace to shield lawbreaking.

Hubbard seeks to breathe into the good faith requirement a duty for MySpace to look behind and even to resist warrants before complying with them; he contends that MySpace "exercis[ed] bad faith" in accepting and responding to the Georgia warrant, and should instead have refused to comply with it.  Compl. ¶ 133.  A contracting party, however, is "not obliged to become an altruist toward the other party and relax the terms if he gets into trouble in performing his side of the bargain."  *Fasolino Foods Co., Inc. v. Banca Nazionale del Lavoro*, 961 F.2d

1052, 1057 (2d Cir. 1992), *quoting Market Street Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 594

(7th Cir. 1991).  Taken to its logical conclusion, Hubbard's protest that MySpace failed to shield

him would require MySpace to move to quash any and all warrants it receives requesting

information about its users.  Far from demonstrating bad faith to Hubbard, MySpace's

cooperation with the warrant showed good faith to Hubbard's victim and the millions of people

who use MySpace lawfully.

### III.     Hubbard's New York Statutory and Common Law Claims Fail.

Like the prisoner plaintiff in *Bansal*, whose claim the Third Circuit characterized as

frivolous, Hubbard includes state law causes of action in addition to his federal and contract

claims.  These have no merit, either.  New York's consumer fraud law has no application to

MySpace's compliance with a search warrant, and the New York Court of Appeals has expressly

declined to recognize the tort Hubbard seeks to plead.

### A.     Hubbard Fails to State a Claim Under New York Gen. Bus. Law § 349.

In addition to arguing, incorrectly, that MySpace breached its agreement with him by

producing documents in response to the Georgia warrant, Hubbard's complaint argues this non-

existent "breach" also constituted a violation of New York's consumer fraud law, N.Y. Gen.

Bus. Law § 349.  Section 349 states that "[d]eceptive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state are hereby declared

unlawful," but requires a plaintiff alleging this claim to demonstrate, among other things, that

"the [alleged] acts are misleading in a material way."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521

(2d Cir. 2000).  Because Hubbard cannot show a breach of the Agreement, he cannot reasonably

allege having been "misled" into believing that MySpace would fail to disclose his information

in response to a warrant or otherwise shield him from the consequences of his illegal behavior.

Case law confirms that where the terms of an agreement contradict a plaintiff's allegations, the terms of the agreement control and the plaintiff's claims of fraud should be dismissed.  *See, e.g., S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 636-37 (2d Cir. 1996) (where plaintiff's allegations "are belied by the exhibits attached to their complaint," including "clear disclaimers, a reasonable consumer would not have been misled"); *Verzani v. Costco Wholesale Corp.*, No. 09 Civ. 2117, 2010 WL 3911499 (S.D.N.Y. Sept. 28, 2010) (dismissing § 349 claims where product label explicitly contradicted plaintiff's claims about what the label allegedly promised); *Phillips v. Am. Int'l Grp., Inc.*, 498 F. Supp. 2d 690, 699 (S.D.N.Y. 2007) (§ 349 claim failed where defendant's contract with plaintiff expressly reserved the right to take the action the plaintiff portrayed as "deceptive").

### B.   New York Has No "Tort" of Public Disclosure of Private Facts.

Hubbard alleges that MySpace "knowingly and intentionally caused the public disclosure of private facts concerning" Hubbard and that those facts "are ones that a reasonable person would not wish disclosed and that are not newsworthy."  Compl. ¶ 115.  Hubbard does not and cannot allege, however, that MySpace, in providing information to the Cherokee County Sheriff's Office, *publicly* disclosed any facts about him.  *See* Dankworth Decl. Ex. A (MySpace communications were not submitted as evidence to obtain Hubbard's conviction).  Indeed, Hubbard's filing of this lawsuit disclosed more facts about him publicly than MySpace ever did.

Even were this not the case, Hubbard cannot maintain a claim for public disclosure of private facts because no such cause of action exists under New York law.[9]  New York statutorily recognizes a limited right to privacy, protecting "the name, portrait or picture of any living

---

[9]   Hubbard admits that his claims against MySpace, pursuant to the terms of the Agreement, are "governed by, and construed in accordance with, the laws of the State of New York."  Compl. Ex. A at 5, Paragraph 16; Compl. ¶ 9.

person" from use in advertising or trade without the individual's permission.  N.Y. Civ. Rights Law § 50 (McKinney 2009); *see also id.* § 51 (providing a private right of action for violation of § 50).  Outside  this statutory protection, "New York does not recognize a common-law right of privacy."  *Messenger ex rel. Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441, 727 N.E.2d 549, 551 (N.Y. 2000); *see also Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123, 612 N.E.2d 699, 703 (N.Y. 1993) ("While the courts of other jurisdictions have adopted [a tort for 'unreasonable publicity given to another's private life'], in this State the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law.").

This Court is bound by the New York Court of Appeals' decision on this point, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), and should dismiss Hubbard's cause of action for failure to state a claim under New York law.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss with prejudice, in its entirety, Hubbard's complaint against MySpace, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because it fails to state a claim.

Dated:  New York, New York
February 11, 2011

DEBEVOISE & PLIMPTON LLP

By:

**/s/ Jeffrey S. Jacobson**
Jeffrey S. Jacobson

Michael B. Mukasey
mbmukase@debevoise.com
Matthew E. Fishbein
mefishbe@debevoise.com
Jeffrey S. Jacobson
jsjacobs@debevoise.com
Courtney M. Dankworth
cmdankwo@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

*Attorneys for Defendant*
*MySpace, Inc.*