UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────x
CORY HUBBARD,                         )   11-cv-00433 (LAK)
                                      )
          Plaintiff,                  )   ECF Case
                                      )
     vs.                              )
                                      )
                                      )
MYSPACE, INC.,                        )
                                      )
          Defendant.                  )
───────────────────────────────────x

## MEMORANDUM OF LAW IN SUPPORT OF MYSPACE, INC.'s MOTION TO DISMISS THE CLASS ACTION COMPLAINT

>     Michael B. Mukasey
>     Matthew E. Fishbein
>     Jeffrey S. Jacobson
>     Courtney M. Dankworth
>     DEBEVOISE & PLIMPTON LLP
>     919 Third Avenue
>     New York, NY 10022
>     (212) 909-6000 (phone)
>     (212) 909-6386 (fax)
>
>     *Attorneys for Defendant*
>     *MySpace, Inc.*

March 2, 2011

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND............................................................................................2

ARGUMENT.....................................................................................................................6

I. The SCA Requires Only That a Warrant Be Issued by a Court with Authority to Issue Warrants, Which the Court in Hubbard's Case Indisputably Possessed....................................................................................................6

II. The SCA Explicitly Immunizes MySpace from Hubbard's Claim. ........................9

III. That Hubbard's Warrant Issued from Georgia, and MySpace Received It by Fax in California, Does Not Affect MySpace's Immunity Under the SCA. .........11

CONCLUSION................................................................................................................14

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Bansal v. Microsoft Hotmail*, 267 Fed. Appx. 184 (3d Cir. 2008) ..................................................11

*Bansal v. Server Beach*, 285 Fed. Appx. 890 (3d Cir. 2008)..........................................................10

*Chill v. General Electric Co.*, 101 F.3d 263 (2d Cir. 1996) ...........................................................10

*Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ........................................3

*First National Bank & Trust Co. v. National Credit Union Administration*,
   90 F.3d 525 (D.C. Cir. 1996)......................................................................................................8

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994)..................................10

*Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004)..............................12, 13

*Freedman v. American Online, Inc.*, 412 F. Supp. 2d 174 (D. Conn. 2005) .................................13

*In re American Bank Note Holographics, Inc. Securities Litigation*,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000)........................................................................................10

*In re Application of United States for an Order Pursuant to 18 U.S.C. Section 2703(d)*,
   157 F. Supp. 2d 286 (S.D.N.Y. 2001).......................................................................................10

*In re Search of Yahoo, Inc.*,
   No. 07-3194-MB, 2007 WL 1539971 (D. Ariz. May 21, 2007) .............................................12

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982)....................................................................................................................7

*Jayne v. Sprint PCS*,
   No. CIV S-07-2522 LKK GGH P, 2009 WL 426117 (E.D. Cal. Feb. 20, 2009) ....................11

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006)................................................................5

*McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006)..................................................................11

*Organizacion JD Ltda. v. U.S. Department of Justice*, 18 F.3d 91 (2d Cir. 1994).......................10

*Reisner v. Stoller*, 51 F. Supp. 2d 430 (S.D.N.Y. 1999)................................................................10

*Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53 (2d Cir. 1993) .................................................3

*Sinoying Logistics Pte Ltd. v. Yi Da Zin Trading Corp.*, 619 F.3d 207 (2d Cir. 2010) .................7

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003) ......................................................7

*United States v. Bach*, 310 F.3d 1063 (8th Cir. 2002)............................................................. 11-12

*United States v. Morton*, 467 U.S. 822 (1984)................................................................................7

*Wingate v. Gives*, No. 05 Civ. 1872 (LAK), 2008 WL 5649089 (S.D.N.Y. Apr. 13, 2008)...........3


**STATUTES**

18 U.S.C. § 2702......................................................................................................................1, 9

18 U.S.C. § 2703.........................................................................................................1, 6, 9, 10, 12

18 U.S.C. § 2707.............................................................................................................1, 9, 10, 11

18 U.S.C. § 2711.................................................................................................................................9

Cal. Penal Code § 1524.2(c) ............................................................................................................7

Ga. Code Ann. § 15-11-2.................................................................................................................2

Ga. Code Ann. § 16-6-5..................................................................................................................2

Ga. Code Ann. § 16-12-1................................................................................................................2

Minn. Stat. Ann. § 626.18................................................................................................................7

Va. Code Ann. § 19.2-70.3 ..............................................................................................................7


**OTHER**

United States Department of Justice,
    "Searching and Seizing Computers and Obtaining Electronic Evidence Manual,"
    *available at* http://www.cybercrime.gov/ssmanual/03ssma.html...........................................12

## PRELIMINARY STATEMENT

From the Georgia prison cell where he is serving 10 to 20 years on his own plea of guilty to the crime of enticing a 13-year-old girl he had befriended online, plaintiff Cory Hubbard sues defendant MySpace, Inc., for providing information, including messages he sent and received under the alias "sweetguycory," in response to a validly issued Georgia warrant served on MySpace by facsimile transmission. Hubbard focuses on the fact that MySpace accepted service of this warrant by fax, contends that MySpace's response to a faxed warrant violated the federal Stored Communications Act (the "SCA"), 18 U.S.C. § 2702 *et seq.*, and seeks to represent a class of others "similarly situated," whose information MySpace disclosed to law enforcement in response to faxed legal process, for the purpose of seeking compensatory and punitive damages.

Hubbard's complaint is untenable. The SCA compelled MySpace to provide Hubbard's information in response to the Georgia warrant. Two provisions of the SCA, 18 U.S.C. §§ 2703 and 2707(e), then provide MySpace an explicit and complete defense to Hubbard's claims arising from MySpace's response to a warrant. Were this not enough, MySpace's Terms of Service and Privacy Policy, which Hubbard cites in his Amended Class Action Complaint and to which he explicitly agreed when he subscribed to MySpace, expressly reserved MySpace's right to monitor communications, delete inappropriate communications, and disclose information in response to legal process. For these reasons, as explained further below, this breathtakingly frivolous case should be dismissed.

MySpace met Hubbard's original complaint with a prompt Rule 12(b)(6) motion and a notice of intent to seek sanctions, in the form of attorneys' fees, pursuant to Rule 11, Fed. R. Civ. P., because Hubbard invoked laws that did not apply, and the interpretation of which could not rationally be extended or modified to apply. Hubbard's Amended Class Action Complaint (hereafter "Compl.") withdrew five of his six baseless claims for relief, but persists in alleging

that MySpace's lawful, fully disclosed and statutorily immunized practice of responding to search warrants sent to it by fax violates the SCA. For requiring MySpace to move *twice* against these unsupportable assertions, Hubbard's counsel should be assessed MySpace's attorneys' fees. MySpace will send its Rule 11 motion to Hubbard's counsel forthwith and file it with the Court as soon as possible.

Should Hubbard fail to withdraw his complaint, requiring the Court to rule on this renewed motion, MySpace requests that such ruling be issued as rapidly as possible, lest the pendency of this litigation affect adversely the lawful cooperation that companies like MySpace generally provide to law enforcement authorities by accepting faxed warrants and responding to them. Prompt cooperation with warrants issued by judges on probable cause established by law enforcement can be critical in the timely apprehension and prosecution of other "sweetguycory"s.

## FACTUAL BACKGROUND

According to the February 11, 2008 Georgia indictment to which Hubbard pleaded guilty, Hubbard arranged to meet in person, on December 1, 2007, a 13-year-old girl he had befriended online. On that day, Hubbard drove the girl to a hotel with the purpose of molesting her, but she escaped and called the police. The authorities arrested Hubbard at the scene for the Georgia crimes of enticing a child for indecent purposes and contributing to the delinquency of a minor.[1]

---

[1] Under Georgia law, "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." Ga. Code Ann. § 16-6-5 (West 2006). "A person . . . contribute[es] to the delinquency, unruliness, or deprivation of a minor when such person . . . [k]nowingly and willfully encourages, causes, abets, connives, or aids a minor in committing an act which would cause such minor" to "[w]ithout just cause and without the consent of his or her parent or legal custodian desert[] his or her home or place of abode." Ga. Code Ann. § 16-12-1; *id.* § 15-11-2.

Declaration of Courtney M. Dankworth, dated March 2, 2011 ("Dankworth Decl.") Ex. A at 24-26 (bill of indictment).  Hubbard admitted these facts and is serving a sentence of at least ten years in prison, which will be followed by ten years of supervised and conditional probation.[2]

MySpace.com is a social networking website.  MySpace's millions of subscribers use it for many purposes, including "to create unique personal profiles in order to find and communicate with old and new friends."  Compl. ¶ 10.  At the time of his arrest, Hubbard maintained a publicly accessible MySpace profile.  His "Friend ID" (*i.e.*, unique user number) was 79001021; he used the screen name "sweetguycory."  As a MySpace user, Hubbard agreed to MySpace's Terms of Service and Privacy Policy (together, the "Agreement").  Hubbard attached these documents as an exhibit to his original complaint and cites them in his amended complaint.  *See, e.g.,* Compl. ¶ 12.[3]

The Agreement included the following reservations of rights:

> MySpace reserves the right, in its sole discretion, to reject, refuse to post or remove any posting (including, without limitation, private messages, emails and instant messages (collectively, "messages")) by you, or to deny, restrict, suspend, or terminate your access to all or any part of the MySpace Services at any time, for any or no reason, with or without prior notice or explanation, and without liability.  In addition, MySpace reserves the right, in its sole discretion, to reassign or rename your profile URL.
>
> MySpace expressly reserves the right to remove your profile and/or [to] deny, restrict, suspend, or terminate your access to all or any part of the MySpace Services if MySpace determines, in its

---

[2] The Court may take judicial notice of Hubbard's certified public record of conviction.  *See Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of a public criminal docket); *Wingate v. Gives*, No. 05 Civ. 1872 (LAK), 2008 WL 5649089, at *3 n.7 (S.D.N.Y. Apr. 13, 2008) ("[T]he Court may take judicial notice of Plaintiff's conviction.").

[3] Hubbard's failure to attach the Agreement to his Amended Complaint does not affect the Court's ability to consider it on this motion to dismiss.  *See Cortec Indus. Inv. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (plaintiff may not avoid consideration of a document integral to his complaint by failing to attach it to his complaint).

3

> sole discretion, that you have violated this Agreement or pose a threat to MySpace, . . . Users and/or the public.

Dankworth Decl. Ex. B at 2, Paragraph 2.  MySpace counseled users to:

> Please choose carefully the information that you post on, through or in connection with the MySpace Services that you provide to other Users.  Your MySpace profile may not include any form of Prohibited Content . . . [because]
>
> MySpace may reject, refuse to post or delete any Content for any or no reason, including, but not limited to, Content that in the sole judgment of MySpace violates this Agreement or which may be offensive, illegal or violate the rights of any person or entity, or harm or threaten the safety of any person or entity.

*Id.* Ex. B at 3, Paragraph 7.

Among the "Content/Activity Prohibited" MySpace reserved the right to monitor and act upon included any use of the service that "**exploits people in a sexual or violent manner**," "**solicits or is designed to solicit personal information from anyone under 18**," "constitutes or promotes information that you know is false or misleading or **promotes illegal activities** or conduct that is abusive, threatening, obscene, defamatory or libelous," or "**furthers or promotes any criminal activity** or enterprise."  Dankworth Decl. Ex. B at 3-4, Paragraph 8 (emphasis added).

MySpace's Privacy Policy, which Hubbard also cites and which the Terms of Service incorporated by reference (*see* Dankworth Decl. Ex. B at 5, Paragraph 12), stated that MySpace "**may access or disclose [a user's information]** in order to," among other things, "**protect the safety and security of Users of the MySpace services or members of the public including acting in urgent circumstances; . . . [or to] comply with the law or legal process**."  *Id.* Ex. C at 3 (emphasis added).

As MySpace disclosed, it cooperates with law enforcement authorities' investigations into unlawful activities.  Hubbard's Amended Complaint cites and attaches a few of the many

4

news articles, published prior to Hubbard's unlawful activities, discussing MySpace's cooperation with law enforcement, including its compliance with faxed warrants and subpoenas. As discussed in the article Hubbard attached as Exhibit A, MySpace advised authorities it could not comply with informal requests for information.  Hubbard's Exhibits B, C and D are news articles in which MySpace and several state attorneys general reiterated that MySpace would produce information upon receipt of process compliant with *each state's* laws.  Hubbard's Exhibit E is a February 2010 news article noting the common practice of internet companies to respond to process served by fax or email, and describing possible plans to develop other, even faster methods for companies like MySpace to cooperate with law enforcement for the purpose of stopping predators like Hubbard.

Following Hubbard's arrest, authorities in Georgia investigated the circumstances of his crime.  On January 29, 2008, the Sheriff's Office in Cherokee County, Georgia, which was holding Hubbard in custody pending indictment and trial, faxed MySpace a search warrant, signed by a magistrate judge, seeking records "concerning the identity of the [MySpace] user with the Friend ID 79001021," in connection with an investigation for the crime of enticing a child for indecent purposes. Dankworth Decl. Ex. D at 2.[4]

MySpace received the Georgia authorities' search warrant at its operations headquarters in California, where it stored Hubbard's data.  It then complied with the warrant.  The warrant specifically sought "name, postal code, country, e-mail address, date of account creation, IP address at account sign-up, logs showing IP address and date stamps for account accesses, and the contents of private messages in the user's inbox and sent mail folders." Dankworth Decl. Ex.

---

[4] This Court may consider the Georgia search warrant itself on this motion to dismiss because "the complaint relies heavily upon its terms and effect." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

D at 2.  MySpace produced (1) records identifying the owner of the "sweetguycory" profile as Hubbard, (2) the Internet Protocol addresses from which the "sweetguycory" account was accessed, and (3) "sweetguycory's" inbox and sent items folder, reflecting messages he sent to and received from other MySpace users.  *See* Compl. ¶ 3.

## ARGUMENT

In arguing that the Georgia court lacked "competent jurisdiction" to issue a warrant that Georgia police would serve on MySpace by fax in California, Hubbard's complaint ignores the unbroken line of authority interpreting the phrase "court of competent jurisdiction" — which appears in many federal statutes — to mean a court possessing *subject matter authority* to hear the type of case presented, even if the court lacked *in personam* jurisdiction over the defendant or target.  Even were there doubt about the meaning of "competent jurisdiction," which there is not, the SCA explicitly immunizes custodians of electronic information from claims, like Hubbard's, arising from their compliance with warrants.  Those provisions routinely have led to dismissals of claims like Hubbard's, along with condemnations for frivolous litigation, including in cases where custodians complied with warrants received by fax.

**I.     The SCA Requires Only That a Warrant Be Issued by a Court with Authority to Issue Warrants, Which the Court in Hubbard's Case Indisputably Possessed.**

The SCA requires custodians of electronically-stored information to disclose that information to law enforcement authorities upon presentment of "a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction."  18 U.S.C. § 2703(a).  The Supreme Court and the Second Circuit have made clear that the phrase "a court of competent jurisdiction" means a court with **subject-matter** "authority to hear a given type of

6

case," not that the court necessarily need have personal jurisdiction over the recipient of the process. *United States v. Morton*, 467 U.S. 822, 828-29 (1984); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 (2d Cir. 2003) ("[A]s a term of art, we give the phrase ['court of competent jurisdiction'] its plain meaning, namely a court that has jurisdiction to hear the claim brought before it."). Hubbard thus has no basis for his contention that the SCA requires warrants to be issued only by courts with unquestioned personal jurisdiction over the warrant's recipient.

Even were there doubt that "competent jurisdiction" does not require *in personam* jurisdiction, which there is not, it is black-letter law that "the requirement of personal jurisdiction . . . can be waived." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *see Sinoying Logistics Pte Ltd. v. Yi Da Zin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("Because personal jurisdiction can be waived by a party, a district court should *not* raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court."). Hubbard cannot point to any statutory or contractual prohibition against MySpace's waiving any jurisdictional defenses it may have to complying with warrants faxed to it by courts in Georgia or elsewhere.

Indeed, not only does the law of California, where MySpace kept Hubbard's data, take it as a given that custodians of electronic information may waive personal jurisdictional requirements and comply with out-of-state warrants, but it actually *requires* remote computing services organized under California law to respond to warrants issued by out-of-state courts as though those warrants had been issued by an in-state court. *See* Cal. Penal Code § 1524.2(c) (West 2010). Minnesota and Virginia (which, together with California, collectively house most of the country's largest internet communications companies) have identical laws. *See* Minn. Stat. Ann. § 626.18 (West 2010); Va. Code Ann. § 19.2-70.3 (West 2010). Even if California

law did not necessarily require MySpace (as a Delaware corporation headquartered and storing data in California) to respond to the Georgia warrant it received by fax in Hubbard's case, the SCA cannot be read to have *prohibited* it from doing so.  Neither Congress nor the California legislature possibly could have intended the absurd result that California-incorporated custodians must respond to faxed warrants and have immunity for doing so, while other custodians headquartered in California must not respond, on pain of lawsuits like this one.

Moreover, as Hubbard's Amended Complaint acknowledges, "MySpace does business and operates throughout the United States."  Whereas MySpace's contractual venue clause (cited in Compl. ¶ 9) requires *MySpace members* like Hubbard to pursue civil claims in New York courts, that clause obviously does not bind *law enforcement authorities*, who have inherent jurisdiction to investigate and pursue civil and criminal offenses allegedly committed against residents of their states who are or were contacted by MySpace members.  Were it not the case that law enforcement authorities across the 50 states have jurisdiction to demand production from companies doing business in their states, these authorities could not protect their citizens as effectively, and state authorities outside California would have to seek interstate cooperation from California officials in obtaining information necessary for investigations and prosecutions — exactly the result the California legislature sought to avoid by requiring California-incorporated custodians to respond directly to out-of-state warrants.

In alleging that MySpace violated the SCA, Hubbard's Amended Complaint takes significant liberties with the statute, arguing that it bars data custodians from complying with warrants unless and until they make an independent determination that a warrant is "valid and enforceable."  Compl. ¶¶ 86-92, 96-107.  Those words, however, appear nowhere in the SCA. *Cf. First Nat'l Bank & Trust Co. v. Nat'l Credit Union Admin.*, 90 F.3d 525, 530 (D.C. Cir.

1996) ("Never paraphrase a statute."). All the SCA requires is a warrant issued by "a court of competent jurisdiction," which, in Hubbard's case, MySpace received.

## II. The SCA Explicitly Immunizes MySpace from Hubbard's Claim.

Assuming *arguendo* that MySpace is a "remote computing service" under the SCA, as Hubbard alleges (Compl. ¶ 63),[5] two provisions of the SCA, 18 U.S.C. §§ 2703 and 2707(e), explicitly immunize remote computing services from claims, like Hubbard's, arising from their having disclosed information pursuant to the terms of a warrant. Courts regularly have dismissed as frivolous SCA-based challenges to the provision of electronic information in response to warrants, including in cases where the custodian of that information received the warrant, as MySpace did, by fax transmission.

Section 2703 provides (emphasis added):

> **No cause of action shall lie** in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons **for providing information**, facilities, or assistance **in accordance with the terms of a court order, warrant**, subpoena, statutory authorization, or certification under this chapter.

There is no requirement in § 2703 that the recipient of a warrant look behind it and make an independent judgment of "validity" before complying. Authority from this Court confirms that "[t]he provider of the electronic communication or remote computing services who complies with an order issued under [§ 2703] is shielded from liability for any claim relating to the

---

[5] The SCA defines "remote computing service" as "the provision to the public of computer storage or processing services by means of an electronic communications system." *See* Compl. ¶ 83, relying on § 2711. Section 2702(a)(2) assumes that a "remote computing service" acts "solely for the purpose of providing storage or computer processing services to such subscriber or customer," and the law bars such providers from "knowingly divulg[ing]" the contents of communications that they "are not authorized to access . . . for purposes of providing any services other than storage or computer processing," absent circumstances such as responding to search warrants and other legal process.

9

disclosure. 18 U.S.C. § 2703(e)." *In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 157 F. Supp. 2d 286, 289 (S.D.N.Y. 2001).

Section 2707(e) of the SCA goes even further than § 2703 and provides that "good faith reliance on — (1) a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . **is a complete defense to any civil or criminal action brought under this chapter or any other law**." *Id.* (emphasis added). Courts have made clear that this language yields a result that is as clear and sweeping as the language itself. *See, e.g.*, *Organizacion JD Ltda. v. U.S. Dep't of Justice*, 18 F.3d 91, 94 (2d Cir. 1994) (per curiam) ("[G]ood faith reliance on a court warrant or order is a complete defense."). Hubbard's complaint falsely contends that § 2707 requires providers to determine that warrants are "valid and enforceable" before they can be said to have demonstrated good faith, but just as no such requirement appears in § 2703, neither does it appear in § 2707.

Claims like Hubbard's invariably have led to findings of immunity and dismissals on Rule 12(b)(6) motions, along with condemnations for litigating frivolously and abusively.[6] *Bansal v. Server Beach*, 285 Fed. Appx. 890, 892 (3d Cir. 2008) (per curiam), for example, involved claims by a prisoner that, while he was being prosecuted on narcotics charges, Microsoft responded to a warrant directing it to "divulge emails and to furnish information

---

[6] In considering a motion to dismiss under Rule 12(b)(6), "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation marks omitted). "The Court need not credit conclusory statements unsupported by fact allegations or legal conclusions and characterizations presented as factual allegations." *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 434 (S.D.N.Y. 2000); *see also Reisner v. Stoller*, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). A court may deny leave to replead if any amendment would be futile. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 271-72 (2d Cir. 1996).

regarding Bansal's account." Bansal argued that Microsoft violated the SCA and that its defense of "good faith" under the SCA could not be resolved on a Rule 12(b)(6) motion. The Third Circuit held that the district court "correctly dismissed Bansal's claims against Microsoft as frivolous." *Id.*, *citing* Section 2707(e); *see also Bansal v. Microsoft Hotmail*, 267 Fed. Appx. 184 (3d Cir. 2008) (dismissing companion appeal as "meritless" due to § 2707).

Similarly, in *McCready v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006), eBay produced information about the plaintiff's transactions pursuant to a subpoena it "received . . . by mail, which is not improper." The Seventh Circuit applied § 2707(e) and upheld a district judge's Rule 12(b)(6) dismissal of the plaintiff's claim. The Seventh Circuit referred to the plaintiff as a "frivolous litigator" and issued an order for the plaintiff to show cause as to why he should not be liable for sanctions. In *Jayne v. Sprint PCS*, No. CIV S-07-2522 LKK GGH P, 2009 WL 426117 (E.D. Cal. Feb. 20, 2009), the court cited § 2707(e) in dismissing a prisoner's claim that Sprint disclosed his mobile phone records without a warrant, based on statements by the police that exigent circumstances existed. The plaintiff claimed that the police fabricated those circumstances and that Sprint should not have considered the police's assertions to be sufficient, but the court held that even if the police acted improperly, Sprint still would be entitled to dismissal on its Rule 12(b)(6) motion. *See id.* at *7.

**III.   That Hubbard's Warrant Issued from Georgia, and MySpace Received It by Fax in California, Does Not Affect MySpace's Immunity Under the SCA.**

Because many courts have described the practice whereby custodians of electronic information, like MySpace, accept search warrants by fax, including from out-of-state courts, MySpace submits that this Court may take judicial notice that this law enforcement practice is widespread. *United States v. Bach*, 310 F.3d 1063 (8th Cir. 2002), contains an extensive discussion of the rationale behind authorities requesting electronic data by faxed search warrant

and causing the custodians of that data to execute the search outside the physical presence of the authorities who served the warrant. "[W]arrants for electronic data are often served like subpoenas (via fax)." *Id.* at 1067 n.1. In these circumstances, "the actual physical presence of an officer would not have aided the search (and in fact may have hindered it)." *Id.* at 1067. Indeed, the SCA, by its own terms, specifically contemplates law enforcement officers *not* being present when a warrant is executed. 18 U.S.C. § 2703(g), titled "Presence of Officer Not Required," states that "the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider . . . of the contents of communications or records or other information pertaining to a subscriber or customer of such service."[7]

In addition to *Bach*, which involved a subpoena served by fax on Yahoo!, the many courts that have readily approved the practice of service providers accepting and responding to faxed warrants and subpoenas include *In re Search of Yahoo, Inc.*, No. 07-3194-MB, 2007 WL 1539971, at *4 n.4 (D. Ariz. May 21, 2007) ("[A]n entity subject to a valid search warrant and an investigating agent located in a different district may mutually agree . . . to production of the sought-after records by fax or mail without the necessity of the agent traveling to the outside district; provided, of course, the search warrant was properly authorized."); and *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 650 (E.D. Va. 2004) ("*VA Freedman*") (noting that AOL responded to one thousand warrants and subpoenas per month, mostly faxed from out-of-state).

---

[7] *See also* U.S. Dep't of Justice, "Searching and Seizing Computers and Obtaining Electronic Evidence Manual," *available at* http://www.cybercrime.gov/ssmanual/03ssma.html ("[I]nvestigators ordinarily do not themselves search through the provider's computers in search of the materials described in the warrant. Instead, investigators serve the warrant on the provider as they would a subpoena, and the provider produces the material specified in the warrant.").

Although no prior case has addressed the exact situation presented here — a custodian's provision of stored electronic information in response to a faxed warrant issued by a state judge from outside the custodian's domicile — numerous courts have upheld against SCA-based challenges custodians' responses to faxed warrants from in-state courts and from federal courts outside the state. None of those decisions turned on any fact that could differentiate Hubbard's case. Indeed, the only occasion on which a court *ever* has refused to dismiss SCA-based claims against a provider for responding to a law enforcement request involved a faxed document from out of state which law enforcement officers *portrayed* as a warrant, but which had a blank line where the judge's signature should have been, and which, in fact, had not actually been approved by a judge. *See Freedman v. Am. Online, Inc.*, 412 F. Supp. 2d 174, 180 (D. Conn. 2005). There, and only there, the court proposed to let the trier of fact decide whether AOL should have noticed the blank line. *See VA Freedman*, 325 F. Supp. 2d at 649-50. Needless to say, the warrant issued by the court in Hubbard's criminal case had no such apparent or actual defect: It was, facially and actually, a warrant, supported by ample probable cause, signed by a judge.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice, in its entirety, Hubbard's complaint against MySpace, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because it fails to state a claim.

Dated:  New York, New York
        March 2, 2011

DEBEVOISE & PLIMPTON LLP

By:

**/s/ Michael B. Mukasey**
    Michael B. Mukasey

Michael B. Mukasey
    mbmukase@debevoise.com
Matthew E. Fishbein
    mefishbe@debevoise.com
Jeffrey S. Jacobson
    jsjacobs@debevoise.com
Courtney M. Dankworth
    cmdankwo@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

*Attorneys for Defendant*
*MySpace, Inc.*