UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

──────────────────────────────── x
CORY HUBBARD,                    )   11-cv-00433 (LAK)
                                 )
            Plaintiff,           )   ECF Case
                                 )
    vs.                          )
                                 )
                                 )
MYSPACE, INC.,                   )
                                 )
            Defendant.           )
──────────────────────────────── x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MYSPACE, INC.'s MOTION TO DISMISS
THE CLASS ACTION COMPLAINT**


                    Michael B. Mukasey
                    Matthew E. Fishbein
                    Jeffrey S. Jacobson
                    Courtney M. Dankworth
                    DEBEVOISE & PLIMPTON LLP
                    919 Third Avenue
                    New York, NY 10022
                    (212) 909-6000 (phone)
                    (212) 909-6386 (fax)


                    *Attorneys for Defendant*
                    *MySpace, Inc.*


March 25, 2011

**ARGUMENT**

Cory Hubbard's complaint should be dismissed not because "[y]es, [he] is admittedly a convicted sex offender," Memo of Law in Opposition to MySpace, Inc.'s Motion To Dismiss (hereafter "Opp. Mem.") at 2, but because the plain text of the Stored Communications Act (the "SCA"), confirmed by every case interpreting it, flatly bars his claim under that law. Hubbard's status is relevant to this motion because: (1) he manifestly is not a victim of any privacy violation; he does not dispute that the search warrant for his communications issued on probable cause, following his arrest *in flagrante*; and (2) he personifies the policy underlying the immunity provisions of the SCA, which allow law enforcement to obtain electronic communications under these circumstances. The SCA does not, as Hubbard would have it, impose a duty on MySpace or any other custodian of electronic communications to "ensure that [the government] jumps through the precise legal hoops" he prefers. Opp. Mem. at 1. The SCA does, however, explicitly immunize MySpace and other custodians of electronic data from lawsuits when they provide data in response to search warrants. That is why every prior suit of this kind has been dismissed as frivolous, as this one also should be.

**I.     18 U.S.C. §§ 2703(e) and 2707(e) Bar Hubbard's Claims Against MySpace.**

The SCA confers immunity from this lawsuit. "Immunity" is not a "blatant mischaracterization," as Hubbard's brief (at 12) asserts, but is the very term courts have used to describe the purpose and effect of 18 U.S.C. §§ 2703(e) and 2707(e). *See, e.g.*, *Jayne v. Sprint PCS*, No. CIV S-07-2522 LKK GGH P, 2009 WL 426117, at *5 (E.D. Cal. Mar. 26, 2009). These statutes do not, as Hubbard claims, merely offer "fact-based affirmative defenses" incapable of resolution on a motion to dismiss. Opp. Mem. at 12. The whole point of immunity is that service providers receiving warrants can and should comply with them without concern

that they will then be sued. That is why in all prior cases where plaintiffs asserted claims after custodians disclosed their data pursuant to warrants, courts dismissed those claims as frivolous.

### A. *The breadth of §§ 2703(e) and 2707(e) is clear.*

MySpace's opening brief quoted 18 U.S.C. §§ 2703(e) and 2707(e) in full, Opening Mem. at 9-10, but they bear repeating. Section 2703(e) says that:

> No cause of action shall lie in any court against any provider of wire or electronic communication service, . . . for providing information, in accordance with the terms of a court order, [or] warrant, . . . under this chapter.

Section 2707(e), similarly, states that "a good faith reliance on . . . a court warrant or order . . . is a complete defense to any civil or criminal action brought under this chapter or any other law."

Hubbard's brief speaks of "privacy protections" he believes MySpace owed him, and for purported violation of which he claims he may sue *because of*, rather than in spite of §§ 2703(e) and 2707(e). Opp. Mem. at 16. He asserts these "protections" required MySpace not to waive jurisdictional defenses it may have had to a warrant seeking his illicit communications with minors. This assertion, however, finds no support in the SCA's immunity provisions or any case law or scholarly work interpreting them. As the sources cited in Hubbard's brief all note, the SCA "balance[s] the interests of users, law enforcement and private industry," Opp. Mem. at 9 n.7, by requiring investigators to demonstrate probable cause to a neutral magistrate. Once they do and obtain warrants, custodians owe the subjects of probable cause findings no further duty.

Sections 2703(e) and 2707(e) are so clear and broad in conferring immunity on custodians complying with warrants that, in the few cases where plaintiffs have attempted to plead claims notwithstanding this immunity, courts have chastised them for doing so. MySpace's opening brief cited the cases in which plaintiffs tried to flout these provisions, each resulting in dismissal on a Rule 12(b)(6) motion. Opening Mem. at 10-11. In none did a court

2

credit *an ex post* challenge to the warrant with which the custodian complied. The courts applied the straightforward language of §§ 2703(e) and 2707(e) and held that because the government obtained warrants (or their equivalents), the custodians could not be sued.

In attempting to distinguish these cases, Hubbard misrepresents them. He falsely contends, for example, that in *Bansal v. Microsoft Hotmail*, 267 Fed. Appx. 184 (3d Cir. 2008) (per curiam), the Third Circuit dismissed a sex offender's claims "as meritless pursuant to 28 U.S.C. § 1915(e) [permitting dismissal of frivolous *in forma pauperis* complaints] **not** 18 U.S.C. 2707(e)." Opp. Br. at 19. In fact, the court dismissed the case as frivolous because § 2707(e) immunized Microsoft. *See* 267 Fed. Appx. at 185 ("[T]he SCA exempts all parties acting pursuant to a court order from liability. 18 U.S.C. § 2707(e)."). Equally false is Hubbard's statement that the same plaintiff, in *Bansal v. Server Beach*, 285 Fed. Appx. 890, 892 (3d Cir. 2008), raised no "question as to the validity of the federal court order pursuant to which" Microsoft divulged communications, Opp. Br. at 18-19, when he actually challenged, unsuccessfully, both the order itself and Microsoft's response. *See* Brief of Appellant, 2008 WL 3994659, at *14 (Apr. 18, 2008). Hubbard contends *Jayne* is inapposite because the court addressed "the statutory authorization for emergency circumstances," not compliance with a court order. As the court stated, however, the two standards are "the same" and equally entitle custodians to immunity under § 2703(e).[1] *Jayne*, 2009 WL 426117 at *7.

**B.     *The cases Hubbard cites did not involve custodians' responses to warrants.***

In a further attempt to narrow a provider's immunity for complying with a warrant, Hubbard cites three other cases. Notably, none involved a warrant. The defendant in *United States v. Councilman*, 418 F.3d 67 (1st Cir. 2005), was charged with "routinely read[ing] the

---

[1]     Hubbard is correct that MySpace's opening brief (at 11) contained a typographical error. *Jayne* dismissed the plaintiff's complaint pursuant to § 2703(e), not § 2707(e).

3

email messages sent to [his company's] subscribers in the hope of gaining a commercial advantage." *Id.* at 70-71.  In *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965 (C.D. Cal. 2010), a civil litigant served a subpoena *duces tecum* on MySpace and two other custodians, which the court held the adverse litigant had standing to seek to quash.  *See id.* at 976.  The case involved neither a search warrant nor a claim for liability under the SCA.

Hubbard bottoms most of his arguments on the third case he cites, *Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004), which MySpace's opening brief (at 13) also cited and discussed.  In *Freedman*, AOL responded to a warrant *application*, not a warrant:  No judge had signed it.  Hubbard inexplicably argues that "*Freedman* did not turn on whether the underlying warrant was signed or unsigned by a judge," but instead on the legal question of the warrant's "valid[ity]."  Opp. Mem. at 18, 20.  Not so.  As stated in *Freedman*, the issue presented was "whether AOL is entitled to the statutory good faith defense [under § 2707(e)] where, as here, it appears that the warrant was unsigned, but AOL's employee mistakenly thought otherwise."  325 F. Supp. 2d at 640.  The court thought fact issues existed because (1) the document to which AOL responded was not actually a warrant, so § 2703(e) did not apply; and (2) both lines where a judge would have signed were blank, so AOL's "good faith" in responding could not be decided as a matter of law.  *Id.* at 647.

That the document in *Freedman* bore no signature, and thus was not a warrant, distinguishes that case from *McReady v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006), in which a litigant allegedly served a forged court order on a custodian, who complied with it.  Whereas the court in *Freedman* held that AOL may have had a duty to ensure that a purported warrant at least had a signature on the judge's line, the Seventh Circuit in *McReady* held that custodians have no duty to look behind a warrant that contains facial indicia of authority.

**II.     The Warrant MySpace Received in Hubbard's Case Appeared To Be, and Was, a Warrant From a State Court With Clear Authority To Issue It.**

Hubbard compounds his error in suing an immune party by citing the wrong statutory language. Hubbard argues that MySpace should not have complied with the warrant it received from the Cherokee County Magistrate Court because, he says, it was not issued by a "court of competent jurisdiction," as currently defined by 18 U.S.C. §§ 2703(a) and 2711(3)(B). The language he cites, however, did not become law until October *2009*, when Congress adopted the Foreign Evidence Request Sufficiency Act, Pub. L. No. 111-79, 123 Stat. 2086 (2009). MySpace received the warrant in Hubbard's case on January 29, *2008*. *See* Dankworth Decl Ex. D. At that time, 18 U.S.C. 2703(a) permitted custodians to disclose data pursuant to "a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant," which is exactly what MySpace received.

    **A.     *The Cherokee County Magistrate Court had jurisdiction under Georgia law to issue the warrant to MySpace in Hubbard's case.***

Hubbard has no basis to argue that the Cherokee County Magistrate Court lacked authority to issue the 2008 warrant to which MySpace responded.[2] Hubbard correctly cites Ga. Stat. Ann. § 15-10-2 as the source of the Magistrate Court's authority, but badly misrepresents

---

[2] The Magistrate Court would satisfy even the current definition of a "court of competent jurisdiction." The term "court of general criminal jurisdiction," as now appears in 18 U.S.C. § 2511(3)(B), also appears in several other federal statutes and never has been interpreted as Hubbard urges. The first court to interpret this language, in *United States v. Lanza*, 341 F. Supp. 405 (M.D. Fla. 1972), noted from the legislative history that its purpose was to "guarantee responsible judicial participation" and to ensure that *non-judges* did not make these decisions. *Id.* at 411-12, *quoting* Sen. Rep. No. 1097, 1968 U.S. Code Cong. & Admin. News p. 2179. *See also United States v. Kaplan*, Crim. No. 06-719, 2009 WL 3806277, at *12 (E.D. Pa. Nov. 13, 2009) (giving expansive reading to identical language in 18 U.S.C. § 2510(9)(b)). Indeed, it appears no court has ever rejected a warrant signed by any judge on the basis Hubbard urges.

that law.  It actually provides that "[e]ach magistrate court and each magistrate thereof shall have jurisdiction and power over the following matters:  (1) the hearing of applications for and the issuance of search warrants . . . [and] (4) the trial of charges of violations of county ordinances and penal ordinances of state authorities."  Were the statute not clear enough, the Georgia Supreme Court unsurprisingly has held it means that "Magistrates may issue search warrants." *State v. Slaughter*, 315 S.E.2d 865, 869 (Ga. 1984).

Moreover, even were Hubbard not wrong about the Magistrate Court's authority, he still could not overcome MySpace's immunity under §§ 2703(e) and 2707(e).  To do so, Hubbard would have to show not only that the warrant was invalid, but also that this invalidity should have been so apparent to MySpace, like the blank signature lines at issue in *Freedman* (but not the forged signature in *McReady*), as to make compliance with it improper.  With no support for his assertion that the Georgia court lacked authority, much less support of which MySpace was or should have been aware, Hubbard cannot make such a showing.

### B. *The Georgia court's territorial jurisdiction is not a factor in its competency.*

Hubbard separately argues that, although neither the prior nor the current version of § 2703(a) requires that the court issuing a warrant must have territorial jurisdiction *ab initio* over the warrant's recipient, the Court nevertheless should read such a requirement into the law.  This is baseless, as is Hubbard's contention that the question he poses is one of "first impression." Opp. Mem. at 1.  A court's "competency" (the current term in § 2703) is a feature of many federal statutes; the Supreme Court and the Second Circuit both have held the term to mean a court with *subject-matter* authority to hear a case, regardless of whether a party may have waivable defenses to the court's *in personam* jurisdiction.  *See* Opening Mem. at 6-8.  The version of § 2703 in effect in 2008, requiring only "an equivalent state warrant" is even clearer.

Further, the issue of custodians responding to faxed state court warrants is hardly one of first impression. As the cases MySpace cited in its opening memorandum (at 11-13) show, and as Hubbard does not dispute, custodians have received and responded to many *thousands* of state court search warrants faxed from different jurisdictions. *See, e.g., Freedman v. Am. Online, Inc.*, 325 F. Supp. 2d 638, 650 (E.D. Va. 2004) (AOL alone responded to one thousand faxed warrants *per month*). Despite this, Hubbard's brief does not cite a single decision in which a court suppressed evidence on territorial jurisdiction or service grounds, and MySpace is aware of none. Hubbard himself did not even attempt to argue in his criminal case that the warrant to MySpace was jurisdictionally invalid. All reported decisions in cases where defendants did try this argument overruled the defendants' objections.[3]

In *State v. Signore*, No. CR00133453S, 2001 WL 1682396 (Conn. Super. Ct. Dec. 11, 2001), the court refused the Connecticut defendant's request to suppress the fruits of a state court warrant faxed from Connecticut to AOL in Virginia. Looking at 18 U.S.C. § 2703(b)(1)(A), which allows governmental entities to "require a provider of remote computing service to disclose [communications] . . . if the governmental entity obtains a warrant," the court held the law to be "plain and unambiguous" in requiring only that the warrant be "obtain[ed]." *Id.* at *2.

---

[3] Elsewhere in Hubbard's brief, he seems to argue that Georgia law might uniquely render warrants void when faxed out of state, even while other states consider extraterritorially served warrants for electronic data to be valid. Hubbard portrays two cases — *State v. Kelley*, 691 S.E. 890, 892 (Ga. Ct. App. 2010), and *Beck v. State*, 658 S.E.2d 577, 579 (Ga. 2008) — as standing for the proposition that a Georgia warrant issued to search premises outside a court's territorial jurisdiction "results in a nullity." Opp. Mem. at 17. Neither had anything to do with territorial jurisdiction, nor did they involve electronic data. In *Kelley*, the person who issued a search warrant had been appointed to the bench temporarily pursuant to an emergency order the appellate court found to be defective. Similarly, in *Beck*, a "warrant" had been signed by a person holding himself out as an "assistant magistrate," when no such position existed and the person had no actual authority. In both cases, reviewing courts suppressed evidence not for any territorial reason, but because neither document was a "warrant" issued by an empowered judge.

The court said that the purpose of the statute was to "properly balance the needs of law enforcement to have access to electronic communications and information in appropriate circumstances." *Id.*, *quoting* Electronic Rights for the 21st Century Act, S. 854, 106th Cong. § 2 (1999). "The privacy and constitutional rights of customers or subscribers of service providers," the court held, "is fulfilled by the provision that the information be disclosed only upon obtaining a warrant." *Id.* Once a warrant "supported by a neutral and detached magistrate's determination of probable cause" issues, § 2703 is satisfied. *Id.* The Eighth Circuit held similarly in *United States v. Bach*, 310 F.3d 1063 (8th Cir. 2002), where Minnesota police faxed a warrant to Yahoo! in California. *See also State v. Bach*, No. A03-10, 2003 WL 22290411 (Minn Ct. App. Oct. 7, 2003) (same); *State v. Kaufman*, No. 32007-0-II, 2005 WL 2746676 (Wash. Ct. App. Oct. 25, 2005) (denying, for lack of standing, motion to suppress evidence produced pursuant to warrant faxed to out-of-state electronic data custodian).

      **C.**    *MySpace owed Hubbard no duty to mount defenses to the warrant.*

The courts in *Bansal*, *McReady* and *Bach* all held fax service of electronic data warrants to out-of-state custodians to be valid once accepted by the custodian. Hubbard does not even try to distinguish these cases. Hubbard's only source for his broader contention that custodians owe customers a duty to fight subpoenas on jurisdictional grounds, and may not waive these defenses, is a general citation to "the SCA," which he calls "the statutory prohibition against such illegal behavior." Opp. Mem. at 16. (Hubbard dropped his claim that MySpace's Terms of Service gave rise to a duty; those terms are clear that MySpace will cooperate with law enforcement.) No such prohibition appears anywhere in the SCA, however, and as MySpace demonstrated in its opening brief (at 7), it is settled law that parties may waive personal jurisdiction defenses. Further, because MySpace does business in Georgia, it is not clear that MySpace even *had* a jurisdictional defense. *See* Opening Br. at 8. Hubbard's brief did not address this.

Yet another misstatement of the law respecting a data custodian's ability to waive jurisdictional defenses is Hubbard's treatment, on pages 22-23 of his brief, of the laws of California, Minnesota and Virginia. Those states *require* data custodians incorporated under their laws to respond to out-of-state warrants as though those warrants had issued from in-state courts. The laws take it as a given that custodians can waive jurisdictional defenses to complying with those out-of-state warrants; the laws simply require custodians to exercise that right. Hubbard pretends that the laws operate to "immunize" those companies (his word), while other companies face liability under the SCA for waiving. Opp. Mem. at 22. This is nonsense, however, because, as Hubbard's brief elsewhere acknowledges, "[t]he SCA, being a federal law . . . override[s] California, Virginia, Minnesota or any other state law purporting to establish a different standard." Opp. Mem. at 14 n.9. This Court thus could not adopt Hubbard's position that the SCA prohibits MySpace from waiving jurisdictional defenses without invalidating by implication these three state statutes on Supremacy Clause grounds.

### III.     MySpace's Opening Brief Did Not Violate Fed. R. Civ. P. 5.2.

With characteristically aggressive sloppiness, Hubbard asserts that when MySpace filed the certified record of his conviction, which contained the names and addresses of witnesses in his criminal case, it "violated Fed. R. Civ. P. 5.2," which in some circumstances requires parties to redact information from public filings. Opp. Br. at 2 n.5.[4] Rule 5.2(b)(3)-(4), however, states that the Rule's redaction requirement "does not apply to . . . the official record of a state-court proceeding" or to "the record of a court or tribunal, if that record was not subject to the redaction

---

[4]   Hubbard also cites, and claims MySpace violated, the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (2002), and Section 21.3 of the Southern District of New York Electronic Case Filing Rules and Instructions. The E-Government Act, however, simply required the Supreme Court to promulgate Rule 5.2, and the S.D.N.Y. ECF rules merely repeat Rule 5.2's requirements. Neither imposes a different or higher duty.

requirement when originally filed." The certified record of Hubbard's conviction falls within both exceptions; not only was MySpace not required by the Rule to redact it, any alteration to the record would have destroyed its value as a certified copy.

## CONCLUSION

For the foregoing reasons, and those stated in MySpace's opening memorandum, the Court should dismiss with prejudice, in its entirety, Hubbard's complaint against MySpace, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because it fails to state a claim.

Dated: New York, New York
       March 25, 2011

DEBEVOISE & PLIMPTON LLP

By:

**/s/ Michael B. Mukasey**
    Michael B. Mukasey

Michael B. Mukasey
    mbmukase@debevoise.com
Matthew E. Fishbein
    mefishbe@debevoise.com
Jeffrey S. Jacobson
    jsjacobs@debevoise.com
Courtney M. Dankworth
    cmdankwo@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

*Attorneys for Defendant*
*MySpace, Inc.*