UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────x
CORY HUBBARD,                            )   11-cv-00433 (LAK)
                                         )
           Plaintiff,                    )   ECF Case
                                         )
     vs.                                 )
                                         )
                                         )
MYSPACE, INC.,                           )
                                         )
           Defendant.                    )
─────────────────────────────────────────x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MYSPACE, INC.'S MOTION FOR SANCTIONS UNDER RULE 11**

Michael B. Mukasey
Matthew E. Fishbein
Jeffrey S. Jacobson
Courtney M. Dankworth
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

*Attorneys for Defendant
MySpace, Inc.*

April 13, 2011

**ARGUMENT**

We certainly agree with plaintiff Cory Hubbard's counsel that Rule 11 motions for sanctions should be pursued cautiously, rarely, and as a "last resort." Opp. Mem. at 5.[1] When attorneys bring a claim against a party that is statutorily immune, however, and refuse to withdraw that claim even once the defendant has demonstrated the extent of that immunity, the imposition of sanctions, however distasteful, is necessary and appropriate.

**I.    Plaintiff's Statutory Claim Is a Frivolous Legal Position Pursued By Plaintiff's Counsel Without a Reasonable Review of the Statutes and Precedent.**

Hubbard's counsel previously acknowledged that five of the six claims for relief they originally pleaded on Hubbard's behalf, and forced MySpace to expend costs moving to dismiss, had no basis. They withdrew those claims with the 21-day Rule 11 "safe harbor" period without even attempting to defend them. Nevertheless, Hubbard's counsel contend that, in contrast to those five withdrawn claims, Hubbard's remaining claim under the Stored Communications Act (the "SCA"), 18 U.S.C. § 2702 *et seq.*, which Hubbard's attorneys have continued to pursue against MySpace despite the immunity afforded to all electronic data custodians under 18 U.S.C. §§ 2703(e) and 2707(e), is the product of a "thoughtful and thorough examination of the relevant law and facts." Opp. Mem. at 2. That assertion could not possibly be true because both the SCA and cases interpreting it clearly bar Hubbard's claim. Hubbard's counsel's protestations ring particularly hollow, moreover, given that they apparently are no longer pursuing key allegations in the amended complaint, including their class action claims. Instead, they now are pursuing a different, equally invalid claim, not pleaded in the amended complaint and relevant only to Hubbard, based solely on the search warrant at issue in Hubbard's own case.

---

[1]   "Opp. Mem." refers to plaintiff's Memorandum of Law in Response and Opposition to MySpace, Inc.'s Motion For Sanctions Under Rule 11, Docket No. 21, filed on Apr. 6, 2011.

The pleading at issue in MySpace's Rule 11 motion is Hubbard's amended complaint, which Hubbard's counsel refused to withdraw during the safe harbor period after having received MySpace's Rule 11 motion in draft form. The amended complaint contains an indiscriminate attack on MySpace's (and, by extension, many other electronic data custodians') compliance with search warrants issued by state courts. The complaint alleges that custodians violate the SCA in each of the thousands of cases per month in which they respond to state court warrants served by fax. *See, e.g.*, Amended Complaint (hereafter "Compl.") ¶ 24 ("State search warrants . . . have no force and effect outside the limits of that state courts' [sic] territorial jurisdiction, and when faxed or sent out of the state, said search warrants are invalid . . . .").

Hubbard's broad-gauge, purported class action claim was baseless, and his counsel pleaded it in violation of MySpace's explicit statutory immunity and without regard to unbroken precedent approving custodians' practice of responding to faxed warrants and labeling as frivolous all prior attempts to plead claims arising from it. *Cf. Connor v. C.I.R.*, 770 F.2d 17, 20 (2d Cir. 1985) (rejecting an argument that "has been rejected so frequently that the very raising of it justifies the imposition of sanctions"). In pleading this claim, moreover, Hubbard counsel quoted ineffective statutory language, relying on the current version of 18 U.S.C. § 2703(a), rather than the one that controlled in 2008, when MySpace responded to the warrant in Hubbard's case. *See* Compl. ¶ 69.[2] The claim thus could not have reflected "an inquiry reasonable under the circumstances" to evaluate the relevant law. Fed. R. Civ. P. 11(b).

---

[2] MySpace recognizes that it had not yet caught Hubbard's counsel's error when it filed its opening brief in support of its motion to dismiss. MySpace's opening brief focused on the SCA's immunity provisions, which protect MySpace from claims regardless of subsequent attacks on the validity of warrants to which it responds. When Hubbard's opposition brief wrongly and irrelevantly focused on the Cherokee County Magistrate Court's jurisdiction in Hubbard's personal case, MySpace studied the issues Hubbard raised and noted Hubbard's counsel's improper reliance on the wrong version of the 18 U.S.C. § 2703(a).

The best evidence that Hubbard's counsel did not adequately investigate their blunderbuss class claim, purporting to challenge compliance with all faxed state court warrants generally, is that they no longer appear to be pursuing that claim.  Now, instead, Hubbard's counsel are urging only an equally baseless, Hubbard-specific claim:  They assert that the Georgia magistrate judge who issued the search warrant to MySpace for Hubbard's information lacked statutory authority to issue warrants in felony cases generally and for electronic data specifically.  *See* Opp. Mem. at 3-4.  Hubbard's amended complaint contains no mention of this contention; Hubbard's counsel made it for the first time in their opposition to MySpace's dismissal motion.  The only allegation in Hubbard's complaint with respect to his personal cause of action was the same, purportedly common "issue" of the warrant in his case having been served on MySpace by fax in California from a state court in Georgia.  *See* Compl. ¶¶ 33-38.

As MySpace demonstrated in its reply brief in support of its motion to dismiss (at 5-6), and in its response to Hubbard's surreply (at 1-5), Hubbard's challenge to the Georgia court's jurisdiction fails, and is, in any event, insufficient to overcome MySpace's broad immunity from Hubbard's claim under the SCA.  Pointedly relevant to MySpace's motion for sanctions, however, is the undeniable fact that this current claim is not the one Hubbard's counsel pleaded in Hubbard's complaint.  Indeed, had Hubbard's counsel pleaded this Hubbard-specific claim, despite its relevance only to the warrant in Hubbard's own case, it would have been even more evident from the face of the complaint than it already was that Hubbard could not satisfy the requirements of Rule 23(a) or (b).  These Hubbard-specific arguments, therefore — even had Hubbard's counsel researched them prior to filing Hubbard's complaint — could not possibly have been what they intended to rely upon when they filed their amended complaint.

It is equally clear that Hubbard's counsel, when they filed the amended complaint, could not rationally have been relying on *Freedman v. America Online, Inc.*, 325 F. Supp. 2d 638 (E.D. Va. 2004), a case involving an unsigned warrant *application*, rather than a duly-executed warrant.  The district court in *Freedman* held that the absolute immunity under the SCA for compliance with an actual warrant did not apply to compliance with an unsigned warrant application, and suggested that AOL might not be able to rely on the alternate "good faith" immunity because it failed to look for a judge's signature.  Hubbard's counsel incorrectly portray *Freedman* as supporting a claim that custodians must look behind any *signed* warrant and determine for themselves whether the state judge that issued the warrant possessed jurisdiction under that state's law to do so.  *See* Opp. Mem. at 11 (citing *Freedman* and portraying the warrant in Hubbard's case as "facially invalid," akin to an unsigned warrant, "because it was signed by a county magistrate who also had no legal authority to issue the warrant").[3]

Even were Hubbard's counsel correct about *Freedman* potentially supporting their current claim about the Georgia magistrate's supposed lack of jurisdiction — and, as demonstrated in MySpace's dismissal briefing, they are not — *Freedman* flatly rejects the broader class action contentions in Hubbard's amended complaint.  *See Freedman*, 325 F. Supp. 2d at 650 (noting, without disapproval, that AOL responded to over one thousand valid, signed warrants and subpoenas per month, mostly faxed from out-of-state).  Hubbard's counsel's

---

[3]   Hubbard's attorneys fault MySpace for supposedly not responding, in its dismissal briefing, to the press articles Hubbard cited in and attached to his complaint, which quote MySpace officials as saying that they could not legally comply with mere law enforcement *requests* for information.  *See* Opp. Mem. at 12.  However, MySpace addressed these articles in its opening brief in support of its motion to dismiss.  *See* Docket No. 10 at 4-5.  These articles, moreover, speak for themselves.  No MySpace official quoted in them ever promised that MySpace would assert jurisdictional defenses to search warrants; to the contrary, MySpace repeatedly asserted its desire and intent to assist law enforcement officials in their efforts.  MySpace also showed that its terms of service also made clear to users that it would cooperate with law enforcement.  *See id.* at 3-4.

citation to *Freedman*, therefore, fails to demonstrate that they conducted a reasonable presuit investigation before making those now apparently abandoned class claims.

More generally, Hubbard's attorneys falsely contend that the scope of electronic custodians' immunity under 18 U.S.C. §§ 2703(e) and 2707(e), is "largely uncharted," Opp. Mem. at 6, or "novel and untested," *id.* at 11, and thus open to "adventuresome, though responsible lawyering." *Id.* at 12.  Their assertion that these are uncharted or untested waters is untrue:  As MySpace showed in its dismissal briefing, the immunity conferred by the SCA when custodians respond to warrants is as broad as the statutory language demands, and every prior attempt to pierce that immunity has been dismissed as frivolous.  This makes Hubbard's counsel's conduct in foisting costs on MySpace, despite MySpace's immunity under the SCA, anything but "responsible."  MySpace further demonstrated in its opening brief (at pages 6-7), again citing numerous cases, that Rule 11 sanctions are particularly appropriate when plaintiffs have sued parties possessing statutory immunity from suit.  Hubbard's counsel's brief neither addressed this point nor attempted to distinguish any of the cases MySpace cited.

Even if it would have constituted "adventuresome, yet responsible lawyering" for Hubbard's counsel to have tested the waters with *one* complaint against a statutorily immune custodian, Hubbard's counsel actually have filed at least *four* cases against immune custodians. The other three of which MySpace is aware are *Losapio v. Comcast Corp.*, No. 1:10-cv-3438-RWS (N.D. Ga. Oct. 22, 2010); *Sams v. Yahoo! Inc.*, No. 5:10-cv-5897-JF (N.D. Cal. Oct. 28, 2010); and *Sams v. Windstream Corp.*, No. 1:10-cv-3525-TCB (N.D. Ga. Oct. 29, 2010).  Those cases, like Hubbard's, all plead broad-gauge attacks, on behalf of putative nationwide classes, based on the defendants' compliance with all faxed warrants and court orders.  (The complaints also contain Hubbard's counsel's same error of reliance on the current version of the SCA in

pleading claims based involving pre-2009 warrants, which Hubbard's counsel have not, as of the time this brief was filed, corrected in those other cases.)

These other cases demonstrate that, although Hubbard himself may not yet be a "serial litigator" of frivolous cases (Opp. Mem. at 11), his lawyers certainly are. Bringing this fourth case against yet another immune custodian, without any indication that his earlier-filed cases are headed anywhere but dismissal, may be "adventuresome," but sometimes ill-considered adventures end badly, and this one should end in a finding that Hubbard's counsel violated Rule 11. To deter future frivolous actions, including further pursuit of the other cases which Hubbard's counsel *now* are pursuing in other courts, Hubbard's counsel should be sanctioned.

## II.   MySpace's Motion Has a Proper Purpose: To Deter Further Frivolous Claims by Plaintiff's Counsel.

"[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). It is for exactly that purpose — to deter Hubbard's counsel and others from pursuing further frivolous claims against immune parties, possibly hindering critical law enforcement investigations in the process — that MySpace is seeking Rule 11 sanctions. MySpace followed the proper procedure under Rule 11 and interposed this motion at the appropriate time: As soon as possible after Hubbard's counsel filed the amended complaint, when Hubbard's counsel could have availed themselves of the "safe harbor" opportunity to withdraw it without penalty.[4]

---

[4] MySpace could not have waited to seek sanctions until after the Court dismissed Hubbard's complaint: Because the purpose of the "safe harbor" is to allow a party to withdraw an offending pleading, the adverse party cannot wait until after the court dismisses the pleading to seek sanctions. *See, e.g.*, *Lawrence v. Richman Group of CT LLC*, 620 F.3d 153, 156 (2d Cir. 2010), *citing In re Pennie & Edmonds, LLP*, 323 F.3d 86, 89 (2d Cir. 2003) (Rule 11 sanctions may not be sought after a point at which the party no longer can withdraw the challenged submission).

6

Hubbard's counsel's contention that deterrence is an *im*proper purpose is simply wrong. They cite *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 180-81 (S.D.N.Y. 2008), for the proposition that a party should not bring a Rule 11 motion for the purpose of bolstering a motion to dismiss. In that case, however, the defendant had not actually filed a Rule 12(b)(6) motion, and it was not clear to Judge Marrero that it would have had a basis for doing so. Even then — in circumstances that obviously were far different from this case, where MySpace quickly moved for dismissal — Judge Marrero did not find that the defendant had interposed its Rule 11 motion for an "improper purpose." Similarly, in *Kaye v. Pers. Injury Funding III, LP*, No. 09-82391-civ-Hurley/Hopkins, 2009 U.S. Dist. LEXIS 127230, at *7-*10 (S.D. Fla. May 12, 2009), the plaintiff responded to the defendant's answer and counterclaims with a Rule 11 motion, rather than a motion to dismiss, and the Rule 11 motion itself contained just two paragraphs of "argument," just citing the requirements of Rule 11 without specifying how the defendant allegedly had broken it. Neither case remotely resembles this one, where MySpace has vigorously pursued its dismissal arguments. Hubbard's third citation, to *Koar v. United States*, 1997 U.S. Dist. LEXIS 15408, at *2 n.2 (S.D.N.Y. Sept. 2, 1997), is even less relevant; in *Koar*, a *pro se* plaintiff filed a frivolous claim, dismissed as such, yet threatened his adversary with a Rule 11 motion for pursuing its successful motion to dismiss.

## III.   MySpace Followed Proper Procedures While Pursuing This Motion.

Hubbard's counsel also assert procedural defenses to MySpace's motion, but these, similarly, are wrong. They challenge the effectiveness of MySpace's service of its draft Rule 11 motion by email on March 4, 2011, but as their own Exhibit A shows, the parties already had a course of dealing by email. Exhibit A demonstrates that the message in which MySpace served its draft Rule 11 motion itself was itself a reply to Hubbard's counsel's own message serving Hubbard's amended complaint by email. Less than three hours after MySpace served its draft

7

motion, Hubbard's counsel responded by email and acknowledged receipt of the draft motion without protesting the method of service. *See* Exhibit B (appended hereto).

Nor were Hubbard's counsel prejudiced by the means of service. In their opposition to MySpace's motion to dismiss, which Hubbard's counsel filed 13 days after receiving MySpace's draft Rule 11 motion, Hubbard's counsel acknowledged MySpace's intent to seek sanctions and indicated in clear terms their own intent to proceed with their case anyway. *See* Opposition to Motion to Dismiss (Docket No. 13) at 1. MySpace nevertheless waited the full 21 days, plus an extra three days for having served the draft motion by means other than hand delivery, before filing its Rule 11 motion with the Court.

Hubbard's counsel correctly note that, between MySpace's service of its draft motion for sanctions on March 4 and its filing of the motion with the Court on March 28, MySpace modified its supporting brief to take account of the dismissal opposition brief Hubbard filed in the interim. Contrary to Hubbard's counsel's contention, however, it was not incumbent upon MySpace to serve its revised draft on them and commence a new 21-day safe harbor period. So long as the earlier draft notified the adversary of "the grounds" for the motion and the relief to be sought, which it did, Rule 11 is satisfied. *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F. Supp. 2d 322, 338-39 (N.D. Iowa 2007). "[S]upplementation of the draft Rule 11 motion with a brief or supporting argument when the Rule 11 motion is ultimately filed does not mean that the motion ultimately filed is improper." *Id.* at 339; *see Robinson v. United Transp. Union*, 167 F. Supp. 2d 1254, 1258 (D. Kan. 2001) (motion as served and motion as filed need not be identical; party may take account of subsequent events in the case). Further, "there is no basis to conclude that plaintiff would have acted any differently — that is, that he would have exercised

any opportunity to withdraw his claims," had MySpace served the identical brief it ultimately filed. *Johnson v. Univ. of Rochester Med. Ctr.*, 714 F. Supp. 2d 427, 429 (W.D.N.Y. 2010).

The cases cited by Hubbard's counsel are not to the contrary; indeed, Hubbard's counsel starkly misrepresents those cases. In *Castro v. Mitchell*, 727 F. Supp. 2d 302 (S.D.N.Y. 2010), a party served and filed a Rule 11 motion *on the same day*, ignoring the 21-day safe harbor requirement entirely. The party sought to justify his actions by saying he had orally threatened to seek sanctions at a hearing earlier in the case, but the court properly held that "statements at a conference do not constitute notice under Rule 11(c)." *Id.* at 307. The "holding" Hubbard's counsel attributes to the case, that "the motion filed after the 21-day safe harbor period must be the actual motion served at the outset," Opp. Mem. at 4, appears nowhere in the case, nor could it given the facts of the case. Neither do *Roth v. Green*, 466 F.3d 1179 (10th Cir. 2006), or *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294 (S.D.N.Y. 2005), contain such a holding; both held only that sending a letter, rather than a draft motion, does not satisfy Rule 11(c). *See Roth*, 466 F.3d at 1192; *Gal*, 403 F. Supp. 2d at 309.

For all these reasons, the Court should reject Hubbard's counsel's request that it refuse to consider MySpace's motion on procedural grounds.

## CONCLUSION

For the foregoing reasons, and those stated in MySpace's opening memorandum, the Court should grant MySpace its attorneys' fees and costs under Rule 11 of the Federal Rules of Civil Procedure.

Dated:  New York, New York
        April 13, 2011

                                          DEBEVOISE & PLIMPTON LLP
                                          By:

                                          **/s/ Michael B. Mukasey**
                                                 Michael B. Mukasey

                                          Michael B. Mukasey
                                                   mbmukase@debevoise.com
                                          Matthew E. Fishbein
                                                   mefishbe@debevoise.com
                                          Jeffrey S. Jacobson
                                                   jsjacobs@debevoise.com
                                          Courtney M. Dankworth
                                                  cmdankwo@debevoise.com
                                          DEBEVOISE & PLIMPTON LLP
                                          919 Third Avenue
                                          New York, NY 10022
                                          (212) 909-6000 (phone)
                                          (212) 909-6386 (fax)

                                          *Attorneys for Defendant*
                                          *MySpace, Inc.*

# Exhibit B

## Jacobson, Jeffrey S.

**From:** Jeffrey Norton [jnorton@hfesq.com]
**Sent:** Friday, March 04, 2011 5:12 PM
**To:** Jacobson, Jeffrey S.; joshua.millican@lawofficepc.com; lisa.millican@lawofficepc.com
**Cc:** Mukasey, Michael B.; Fishbein, Matthew E.; Dankworth, Courtney M.
**Subject:** RE: Hubbard v. MySpace, Inc.

Counsel,

We are in receipt of your proposed Rule 11 motion and notice of intention to file.

Your threats and purported Rule 11 motion are not well taken. And, as offended as your client may be about the nature of this lawsuit, you should think twice about proceeding with its filing. Indeed, the Advisory Comm. Notes observe that the filing of a frivolous Rule 11 motion "is itself subject to the requirements of the rule and can lead to sanctions." As such, if you proceed with your threat, we will respond in kind and seek costs under the Rule.

Based upon your initial motion to dismiss, we availed ourselves of Rule 15(a)(1)(b) for the precise reason the rule exists. That is, to review the arguments raised in opposition and make an informed judgment about how to narrow and improve upon the claims. We evaluated what claims were the most appropriate to pursue and how to improve upon those claims. This is no longer about the initial complaint as that pleading is now moot.

Should you choose to follow through with the Rule 11 motion, in our opposition and cross motion we will underscore the fact that you concede in your motion to dismiss that this is a case of first impression on the facts presented. We will also argue that, from our perspective, this case is not dissimilar from the *AOL* case (*i.e.*, a company accepting a facially invalid warrant). The numerous articles we included in our amended complaint demonstrate also that MySpace prided itself publicly on strict compliance with legal process – so much so that it set up a unit to comply with the myriad state and federal laws. In fact, as we point out in the amended complaint, MySpace's chief security officer, Hemanshu Nigam, was quoted as stating that "every time a legal process comes in, whether it's a subpoena or a search order, we do a legal review to make sure it's appropriate." Nigam stated further that MySpace accepts law enforcement requests through e-mail, fax, and postal mail, and that it has a 24-hour operations center that tries to respond to requests soon after they've been reviewed <u>to make sure state and federal laws are being followed.</u>

There is no good faith defense when your own client vigorously represents publicly its strict adherence to and expertise of state and federal law. At the very least, we believe there is an issue of fact on that score. We also believe have a reasonable basis to bring this claim in an area of rapidly developing law. As you point out, there are no cases directly on point, and Rule 11 merely requires that we pursue only such claims as "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." We submit that easily we meet that standard and your own concession bolsters the point.

Consequently, we ask that you withdraw your notice. If you do not withdraw the notice, we will consider serving our own notice of intent to seek Rule 11 sanctions based on your email alone. Should you wish to discuss this matter further, we will make ourselves available.

Regards,
Jeff



Jeffrey M. Norton
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, New York 10022
tel. 212.935.7400 (ext. 286)
fax 212.753.3630
http://www.hfesq.com

ATTORNEY/CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT. The information in this transmittal may be privileged and confidential and is intended only for the recipient(s) listed above. If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any distribution or copying of this transmittal is prohibited. If you have received this transmittal in error, please notify Harwood Feffer LLP immediately at (212) 935-7400 or by return e-mail.

**From:** Jacobson, Jeffrey S. [mailto:jsjacobson@debevoise.com]
**Sent:** Friday, March 04, 2011 2:35 PM
**To:** Jeffrey Norton; 'joshua.millican@lawofficepc.com'; 'lisa.millican@lawofficepc.com'
**Cc:** Mukasey, Michael B.; Fishbein, Matthew E.; Dankworth, Courtney M.
**Subject:** RE: Hubbard v. MySpace, Inc.

Counsel,

Attached is the draft Rule 11 motion for sanctions we intend to file in 21 days if, prior to that time, you have not withdrawn your complaint in this matter.

Regards,

Jeffrey S. Jacobson, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, New York 10022
(212) 909-6479 (direct dial)
(212) 521-7479 (direct fax)
jsjacobson@debevoise.com

**From:** Jeffrey Norton [mailto:jnorton@hfesq.com]
**Sent:** Friday, February 25, 2011 5:04 PM

**To:** Fishbein, Matthew E.; Jacobson, Jeffrey S.; Dankworth, Courtney M.
**Cc:** Joshua A. Millican; Lisa.Millican@lawofficepc.com
**Subject:** Hubbard v. MySpace, Inc.

Counsel,

Attached is a courtesy copy of Plaintiff's Amended Complaint filed earlier today pursuant to FRCP 15(a)(1)(b). The same is being served by regular mail.

Regards,
Jeff

_____



Jeffrey M. Norton
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, New York 10022
tel. 212.935.7400 (ext. 286)
fax 212.753.3630
http://www.hfesq.com

ATTORNEY/CLIENT PRIVILEGED, ATTORNEY WORK PRODUCT. The information in this transmittal may be privileged and confidential and is intended only for the recipient(s) listed above. If you are neither the intended recipient(s) nor a person responsible for the delivery of this transmittal to the intended recipient(s), you are hereby notified that any distribution or copying of this transmittal is prohibited. If you have received this transmittal in error, please notify Harwood Feffer LLP immediately at (212) 935-7400 or by return e-mail.

4/13/2011