**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CORY HUBBARD,<br>Plaintiff,<br>vs.<br>MYSPACE, INC.,<br>Defendant. | 11-cv-00433 (LAK)<br>ECF Case |

**MYSPACE'S RESPONSE TO PLAINTIFF'S "POST-HEARING MEMORANDUM"**

Michael B. Mukasey
Matthew E. Fishbein
Jeffrey S. Jacobson
Courtney M. Dankworth
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)

*Attorneys for Defendant*
*MySpace, Inc.*

May 31, 2011

## ARGUMENT

Buried in plaintiff Cory Hubbard's eight-page "Post Hearing Memorandum" purporting to address the legislative history of the Stored Communications Act (the "SCA"), 18 U.S.C. § 2703(a), are two correct statements that, while having nothing to do with legislative history, are relevant to the outcome of this case. One is that Georgia magistrates "may issue criminal [search] warrants even where they would not otherwise have the power to adjudicate the underlying criminal offense." Pl. P-H Mem. at 3. The other is that "[b]ecause the plain language of the [SCA] is clear, the inquiry [as to its meaning] need not go further." *Id.* at 2. The SCA's text explicitly empowers federal magistrates (who, like Georgia magistrates, cannot adjudicate felony cases) to issue warrants, and then instructs providers of communications services to respond to those or "equivalent state warrant[s]." That clear text shreds Hubbard's contentions.

Hours before Hubbard filed his latest brief, the Supreme Court reiterated the already sturdy principle that "a high threshold must be met if a state law is to be pre-empted for conflicting with the purposes of a federal act." *Chamber of Commerce v. Whiting*, __ S. Ct. __, 2011 WL 2039365 (May 26, 2011) (citations omitted). Oblivious of that long-standing and newly restated guidance, Hubbard argues that Congress, in its USA PATRIOT Act amendments to § 2703(a) in 2001, *sub silentio* intended to pre-empt Georgia's and other states' laws that long have permitted state magistrates to issue the "equivalent state warrants" explicitly mentioned in the statute, at least in cases where those magistrates could not adjudicate the felony trials that ultimately may result. Again, MySpace is constrained to agree with Hubbard that the Court need not resort to the legislative history of these amendments to dispose of Hubbard's arguments.

Even were legislative history relevant, the snippets Hubbard cites flatly contradict his position. He points to an exchange in which several Members of Congress debated whether the

new § 2703(a) would allow any federal magistrate in the country to issue a warrant for stored communications, or only a magistrate in the district where the offense under investigation occurred. *See* H.R. Rep. No. 107-236 pt. 1, pp. 296-304 (2001). That debate led to the bill's being changed to provide that only a court "with jurisdiction over the offense under investigation" could issue a warrant, rather than any court "without geographic limitation." At the conclusion of this exchange, Members from both political parties expressed their intent that "the judge [issuing the warrant] ought to have some connection to the crime." *Id.* at 304.[1] Nothing in this exchange suggests Congress ever considered stripping state magistrates who had the necessary geographic connection to a crime, as the Cherokee County court here certainly did, of authority they already possessed under state law to issue warrants. To the contrary, the only mention of state authority in this Congressional debate indicated that "we are leaving the current statute with regard to State jurisdiction unchanged." *Id.* at 303 (statement of Rep. Frank).

Alternatively, Hubbard disengages from the legislative history that was supposed to occupy his submission to contend that a 2002 case uncited in his prior briefs, *United States v. Cotton*, 535 U.S. 625, 630 (2002), adopted a definition of "jurisdiction" that governs here. Pl. P-H Memo at 4. In *Cotton*, the Supreme Court held that "defects in an indictment do not deprive a court of its power to adjudicate a case." That has nothing at all to do with this matter. Here, in the Georgia county where Hubbard committed his offense, a court statutorily empowered to issue

---

[1] The cases Hubbard cites interpreted the law consistently with this clear Congressional intent. *See In the Matter of the App. of the U.S. for a Search Warrant*, 665 F. Supp. 2d 1210, 1219 (D. Or. 2009) (amendments "authorize[d] the court with jurisdiction over the investigation to issue the warrant directly, without requiring the intervention of its counterpart in the district where the ISP is located.); *In re Search Warrant*, No. 6:05-MC-168, 2005 WL 3844032, at *5 (M.D. Fla. Feb. 13, 2006) ("[I]t makes little sense to require the government, once it has opened an investigation into an alleged federal crime in the district where that crime allegedly occurred, to have to look to the courts . . . where certain evidence may be found in order to procure a warrant for a search in that other district.").

a search warrant did so, and MySpace, the recipient of the search warrant, complied with it. Two provisions of the SCA, 18 U.S.C. §§ 2703(e) & 2707(e), immunize MySpace from claims arising from its having done so. Full stop.

## CONCLUSION

Footnote 3 of Hubbard's brief, in which he concedes that he never should have alleged his claims as he did, that his action "should be limited to state magistrate courts and the like that do not have authority to adjudicate the offenses under investigation," and that he should have leave to amend (again), is emblematic of the mindless persistence that has informed his case from the outset and has *twice* put MySpace to the cost and burden of moving to dismiss claims Hubbard now admits were ill-considered. Hubbard's admission exemplifies that his case, from the outset and still, has been unsupported by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law. MySpace respectfully urges the Court to dismiss Hubbard's claims, and to impose sanctions, at its earliest opportunity.

Dated: New York, New York
May 31, 2011

DEBEVOISE & PLIMPTON LLP
By:

**/s/ Michael B. Mukasey**
Michael B. Mukasey

Michael B. Mukasey
mbmukase@debevoise.com
Jeffrey S. Jacobson
jsjacobs@debevoise.com
Courtney M. Dankworth
cmdankwo@debevoise.com
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6386 (fax)
*Attorneys for Defendant*
*MySpace, Inc.*