UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CORY HUBBARD,

                        Plaintiff,


                -against-                                    11 Civ. 0433 (LAK)


MYSPACE, INC.,

                        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**

            Appearances:


Robert I. Harwood                          Michael B. Mukasey
Jeffrey M. Norton                          Matthew E. Fishbein
HARWOOD FEFFER LLP                         Jeffrey S. Jacobson
                                           Courtney M. Dankworth
Joshua A. Millican                         DEBEVOISE & PLIMPTON LLP
LAW OFFICE OF JOSHUA A. MILLICAN, P.C.     *Attorneys for Defendant*

Matthew C. Billips
BILLIPS & BENJAMIN LLP

Lisa T. Millican
GREENFIELD MILLICAN P.C.

*Attorneys for Plaintiff*


LEWIS A. KAPLAN, *District Judge.*

            This is a purported class action against MySpace, Inc. ("MySpace"), operator of the

well known social networking website, arising out of its disclosure of members' account information

to law enforcement.  Plaintiff Cory Hubbard sues individually and on behalf of all individuals

2

similarly situated.  The matter is before the Court on MySpace's motions to dismiss the amended

complaint and for sanctions.

*Facts*

The allegations of the amended complaint, which do not appear to be in dispute, are

as follows.

On December 1, 2007, Georgia authorities arrested plaintiff for contributing to the

delinquency of a minor and "enticing a child for indecent purposes."  On January 29, 2008, in the

course of investigating plaintiff's alleged crimes, the sheriff's office of Cherokee County, Georgia,

obtained a search warrant from the Magistrate Court of Cherokee County.[1]  The warrant instructed

"all peace officers of the state of Georgia" to search MySpace's custodian of records in Beverly

Hills, California, for:

> "Records concerning the identity of the user with the Friend ID 79001021 consisting
> of name, postal code, country, e-mail address, date of account creation, IP address
> at account sign-up, logs showing IP address and date stamps for account accesses,
> and the contents of any private messages in the user's inbox and sent mail folders."[2]

That same day, the sheriff's office faxed the warrant to MySpace's custodian of records in

California.  MySpace subsequently "accessed and produced and disclosed the requested personal

and private user information, data, records and/or the contents of electronic communications to law

enforcement."[3]

---

[1]     DI 11 Ex. D.

[2]     *Id.*

[3]     Amended Complaint ("Cpt.") ¶ 39.

3

Plaintiff eventually entered a guilty plea.  He currently is serving a sentence of 10 to 20 years in state prison.

On January 20, 2011, plaintiff brought this suit against MySpace.  He asserts that MySpace's disclosure of records and information pertaining to his account violated the Stored Communications Act ("SCA"), which was enacted as part of the Electronic Communications Privacy Act of 1986 ("ECPA").  It seeks damages and other relief on behalf of plaintiff and all others similarly situated, viz. all MySpace users whose information and records the company allegedly has disclosed in violation of the law.

*Discussion*

Under the SCA, subject only to certain exceptions,

"(1) a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service; and

"(2) a person or entity providing remote computing service to the public shall not knowingly divulge to any person or entity the contents of any communication which is carried or maintained on that service –

"(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such service;

"(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing; and

"(3) a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of

4

communications covered by paragraph (1) or (2)) to any governmental entity."[4]

The ECPA creates a private right of action against violators of these prohibitions:

"Except as provided in section 2703(e), any provider of electronic communication service, subscriber, or other person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."[5]

Section 2703(e), in turn, provides that:

"No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter."[6]

The amended complaint alleges that MySpace operates an electronic communication service and a remote computing service as defined by the ECPA.[7]  It claims that the company violated the SCA by producing information and records pertaining to plaintiff's MySpace user account.  MySpace argues that it produced these materials pursuant to the warrant that it received and that this action therefore must be dismissed under Section 2703(e).  Plaintiff counters that the warrant that MySpace received was not sufficient under this statutory scheme.  The question therefore is whether MySpace's production was "in accordance with the terms of a . . . warrant . .

---

[4]      18 U.S.C. § 2702(a).

[5]      18 U.S.C. § 2707(a).

[6]      18 U.S.C. § 2703(e).

[7]      Cpt. ¶¶ 60-63.

. under this chapter."[8]

At the time MySpace received the Georgia warrant, 18 U.S.C. § 2703(a) provided

that:

> "A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a *warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or an equivalent State warrant*."  (emphasis added).[9]

Plaintiff makes two arguments that the Georgia warrant did not suffice under this section.[10]  Before

turning to them, though, one point bears clarification.

Section 2703(a) condones two types of warrants: (1) "a warrant issued using the

---

[8]

The parties argue on the assumption that, as used in Section 2703(e), the modifier "under this chapter" applies not only to certifications but to warrants (and, presumably, orders, subpoenas, and authorizations) as well.  *See* DI 10 at 12, 13; DI 15 at 2; DI 20 at 2-3.  As a matter of statutory interpretation, this point is debatable.  *See Allard K. Lowenstein Intern. Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) (where "two alternative clauses . . . are separated by a comma" but "the modifying condition at the end of the second clause is not separated from its reference by anything at all," "the qualifying phrase modifies only the immediately antecedent" clause).  However, as no party has argued that "under this chapter" does not apply to warrants or how (if at all) such a construction would affect the analysis on this motion, the Court proceeds on the parties' assumption.

[9]

Effective October 19, 2009, the language "by a court with jurisdiction over the offense under investigation or an equivalent State warrant" was amended to read "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction."

[10]

Initially, in addition to the arguments addressed below, plaintiff contended that the warrant was insufficient because it was served upon MySpace by fax.  The argument is without merit.  Plaintiff cited no authority – regarding the ECPA or otherwise – for the proposition that faxed warrants are invalid.  DI 13 at 20-23.  After making this argument in his opposition to this motion, plaintiff did not raise it in his surreply, DI 20, or subsequent brief, DI 24.

procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation" and (2) "an equivalent State warrant." As it is undisputed that the warrant faxed to MySpace was a state warrant, the parties focus on whether it qualified as the latter – "an equivalent State warrant."

## I.        *"Jurisdiction Over the Offense Under Investigation"*

First, plaintiff contends that the warrant does not qualify as "an equivalent State warrant" because the signing magistrate did not have "jurisdiction over the offense under investigation." The premise is that "an equivalent State warrant" must, like the federal warrants described in the preceding clause to which it must be equivalent, be issued "by a court with jurisdiction over the offense under investigation." The Court agrees with this premise, which MySpace does not dispute.

Plaintiff's argument that the Georgia magistrate who signed the warrant lacked jurisdiction over the offense under investigation is based on GA. CODE § 15-10-2(4). Under that section, Georgia magistrates' jurisdiction to try cases extends to "[t]he trial of charges of violations of county ordinances and penal ordinances of state authorities." As plaintiff was being investigated for a serious felony, he argues, the Georgia magistrate did not have the requisite jurisdiction.

MySpace responds that "jurisdiction over the offense under investigation" does not means jurisdiction to preside over trials, but only to issue warrants. Under GA. CODE § 15-10-2(2), Georgia magistrates "have jurisdiction and power over the . . . [i]ssuance of warrants." And "[w]hile the Georgia Constitution states that superior courts have exclusive jurisdiction 'over trials in felony cases,' Georgia statutes vest numerous lesser courts, including magistrate courts, with the jurisdiction to hear applications for search warrants and issue search warrants upon a finding of

probable cause."[11]   Georgia magistrates routinely issue search warrants for the investigation of felonies, despite the fact that they may not preside over any subsequent prosecutions of those crimes.[12]

The phrase "jurisdiction over the offense under investigation" is ambiguous inasmuch as it could refer to jurisdiction to preside over trials or to issue warrants.  But the Court concludes that, in the context of this statutory scheme, "jurisdiction over the offense under investigation" implicates a judicial officer's authority to issue warrants, not to try cases.

Under FED. R. CRIM. P. 41(b), "a [federal] magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property located within the district[.]"  This authority is not limited to certain kinds of offenses.  Indeed, federal magistrate judges routinely issue search warrants in felony investigations.[13]  Federal magistrate judges' jurisdiction to try cases, however, extends only to "misdemeanors committed within th[eir] judicial district[s]."[14]  Like Georgia magistrates, then, federal magistrate judges ordinarily may issue warrants in investigations of felonies even though they cannot preside over felony trials.

We might ask, then, whether Section 2703(a)'s requirement of "jurisdiction over the offense under investigation" deprived federal magistrate judges of authority that they ordinarily

---

11

    *State v. Lejeune*, 277 Ga. 749, 751-52, 594 S.E.2d 637, 640-41 (2004) (footnote omitted).

12

    *See, e.g.*, *Adams v. State*, 288 Ga. 695, 707 S.E.2d 359, 367 n.2 (2011) (Hunstein, C.J., concurring) (child molestation); *Ginn v. State*, 293 Ga. App. 757, 759, 667 S.E.2d 712, 714 (2008) (reckless conduct); *State v. Richardson*, 276 Ga. App. 784, 785, 625 S.E.2d 52, 53 (2005) (possession of a controlled substance with intent to distribute).

13

    *E.g.*, *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 381 (5th Cir. 2009);  *United States v. 141st Street Corp. by Hersh*, 911 F.2d 870, 875 (2d Cir. 1990).

14

    18 U.S.C. § 3401(a).  *See also* 28 U.S.C. § 636(a)(3).

enjoyed, to wit, authority to issue search warrants in the course of felony investigations.  There is no indication that Congress intended to do so.  Indeed, the pertinent legislative history demonstrates that debate over "jurisdiction over the offense under investigation" focused on the location and not type of court that would be issuing warrants.[15]  Moreover, federal magistrate judges issued search warrants implicating the ECPA in felony investigations throughout the period in which this statutory language was in effect.[16]

The question here – whether the Georgia magistrate who signed the warrant faxed to MySpace had the necessary jurisdiction – is thus straightforward.  If a federal warrant would have sufficed under Section 2703(a) despite having been issued by a magistrate judge who could not have presided over a trial of the investigated offense, the same no doubt can be said of an "*equivalent* State warrant."  The warrant at issue therefore was not insufficient merely because the Georgia magistrate could not have presided over a criminal trial of the plaintiff.

## II.    *Territorial Jurisdiction*

As a general rule, a Georgia "magistrate may not issue a search warrant for a location outside of his district."[17]  By issuing a warrant for a search of MySpace's records custodian in California, the issuing magistrate indisputably exceeded his ordinary territorial authority.  Plaintiff

---

[15]    H.R. Rep. No. 107-236, pt. 1, at 300 *et seq.* (2001).

[16]    *E.g.*, *United States v. Berkos*, 543 F.3d 392 (7th Cir. 2008); *Warshak v. United States*, 490 F.3d 455 (6th Cir. 2006).

[17]    *State v. Kirkland*, 212 Ga. App. 672, 672, 442 S.E.2d 491, 492 (1994).  *See also State v. Lejeune*, 277 Ga. 749, 751-52, 594 S.E.2d 637, 641 (2004) ("The authority of any judicial officer . . . to issue a search warrant is limited to places within that court's territorial jurisdiction."); *Allison v. State*, 129 Ga. App. 364, 199 S.E.2d 587 (1973).

argues that the warrant served upon MySpace therefore does not qualify as "an equivalent State warrant" for purposes of Section 2703(a).

As stated above, what constitutes "an equivalent State warrant" is not clear. In the context of Section 2703(a), the Court understands such a warrant as being "equivalent" to one "issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation." This language is ambiguous as to whether a state or federal warrant authorizing a search beyond the ordinary territorial authority of the issuing magistrate or judge is acceptable. Once again, though, consideration of acceptable federal warrants under Section 2703(a) – the warrants to which acceptable state warrants must be "equivalent" – offers guidance.

Under FED. R. CRIM. P. 41(b)(1), "a magistrate judge with authority in the district . . . has authority to issue a warrant to search for and seize a person or property located within the district." This provision notwithstanding, courts repeatedly have upheld federal magistrates judges' authority to issue warrants under Section 2703(a) while the pertinent language was in effect.[18] In light of the legislative history of this section, the Court agrees with that conclusion.

Congress made clear that, in adopting the relevant statutory language, it specifically intended to allow federal courts to authorize searches beyond their normal territorial jurisdictions:

> "Title 18 U.S.C. § 2703(a) requires a search warrant to compel service providers to disclose unopened e-mails. This section does not affect the requirement for a search

---

[18]   These courts held that the limitation on federal magistrate judges' territorial authority is substantive and therefore does not apply to § 2703(a), which, the courts reasoned, requires compliance only with procedural warrant safeguards. *See, e.g.*, *United States v. Berkos*, 543 F.3d 392, 397-98 (7th Cir. 2008); *United States v. Kernell*, No. 3:08-CR-142, 2010 WL 1408437 (E.D. Tenn. Apr. 2, 2010). The Court need not consider this rationale, however, as it is persuaded for the reasons described above that warrants may satisfy § 2703(a) notwithstanding their noncompliance with territorial limitations.

warrant, but rather attempts to address the investigative delays caused by the cross-jurisdictional nature of the Internet. Currently, Federal Rules of Criminal Procedure 41 requires that the 'warrant' be obtained 'within the district' where the property is located. An investigator, for example, located in Boston who is investigating a suspected terrorist in that city, might have to seek a suspect's electronic e-mail from an Internet service provide (ISP) account located in California. The investigator would then need to coordinate with agents, prosecutors and judges in the district in California where the ISP is located to obtain a warrant to search. These time delays could be devastating to an investigation, especially where additional criminal or terrorist acts are planned.

"Section 108 amends § 2703 to authorize the court with jurisdiction over the investigation to issue the warrant directly, without requiring the intervention of its counterpart in the district where the ISP is located."[19]

Thus, even though federal magistrate judges typically may issue warrants only for searches within their districts, extraterritorial warrants are permissible for purposes of Section 2703(a).

Plaintiff concedes as much.[20] He nevertheless contends that state – as opposed to federal – warrants do not satisfy Section 2703(a) where the issuing court exceeds its ordinary territorial authority. The Court disagrees. If federal warrants satisfy Section 2703(a) in these circumstances, the same ought to be true of equivalent state warrants. Indeed, Georgia law appears to recognize the heightened territorial authority that magistrates and judges may have in issuing warrants for purposes of the ECPA. The Georgia Code provides that "[s]earch warrants for production of stored wire or electronic communications and transactional records pertaining thereto shall have *state-wide application or application as provided by the laws of the United States*."[21]

---

[19]

H.R. Rep. No. 107-236, pt. 1, at 57 (2001). *See also In re United States*, 665 F. Supp 2d 1210, 1219 (D.Or. June 23, 2009); *In re Search Warrant*, 362 F. Supp.2d 1298, 1304-05 (M.D. Fla. 2003), *rev'd*, No. 6:05-MC-168-Orl-31JGG, 2005 WL 3844032 (M.D. Fla. Feb. 13, 2006).

[20]

DI 13 at 21.

[21]

GA. CODE § 16-11-66.1 (emphasis added).

It bears clarifying that Section 2703(a) does not impermissibly expand the power of Georgia magistrates or any other courts.  Although the point has never been established firmly, it appears that the Fourth Amendment does not protect persons like plaintiff from searches such as this one, to wit, searches of users' information and records electronically stored with private third parties.[22]  Prior to the ECPA's enactment, then, warrants were not required to conduct such searches. Congress filled that void to an extent.  Although the ECPA provides some amount of judicial oversight for these searches, it did not – and did not have to – import the entirety of federal and state warrant protections.  For purposes of this federal right and federal cause of action, Congress had flexibility to define the protections it thought appropriate.

*Conclusion*

MySpace's motion to dismiss the amended complaint [DI 9] is granted.  As the Court sees no proper basis for sanctions, the motion to impose them [DI 16] is denied.  The Clerk shall enter judgment and close the case.

SO ORDERED.

Dated:          June 1, 2011

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[22]      *See* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending it*, 72 Geo. Wash. L. Rev. 1208, 1210-12 (2004).